No. 32,419

V. W. PUHR et al., *Appellees*, v. KANSAS CITY et al., *Appellants*.

(51 P. 2d 911)

Opinion filed December 7, 1935.

*A. H. Skinner, William Drennan, John O'Brien, Otto Ziegelmeyer* and *Charles W. Lowder,* all of Kansas City, for the appellants.

*H. J. Smith* and *Joseph Cohen,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

BURCH, C. J.: The action was one for damages for injury to real estate, consequent on erection of a municipal water tower and tank on adjoining land. A demurrer to the petition was overruled, and defendants appeal.

The city of Kansas City is a city of the first class, having the commission form of government. In July, 1924, the governing body enacted a zoning ordinance creating residence districts. The ordinance provided that no building or premises should be used and no building should be erected in a residence district, except for one or more enumerated uses. In the enumeration appeared the following: "11. Public and semipublic uses as provided in section 8."

Section 8 contained the following:

"The board of commissioners may, by special permit after public hearing, authorize the location of any of the following buildings or uses in any district from which they are prohibited by this ordinance:

. . . . . . . . . . . . . . . . .

"8. Public utility."

Plaintiffs own a lot in a residence district, on which stands a dwelling house. The petition alleged plaintiffs purchased the lot and erected the improvement because the lot was in a zoned residence district and they could be assured of a quiet district in which to reside.

In 1929 the legislature passed an act abolishing the office of water and light commissioner in the city of Kansas City. Management and control of its water and light plants were committed to a board of public utilities, charged with duty to supply water and electric energy for domestic and industrial purposes and for public use in the city. The board was given plenary authority to manage, operate, maintain and control such plants, including authority to improve, extend and enlarge. (R. S. 1933 Supp., art. 12, ch. 13.)

In the year 1934 the board of public utilities erected a water tower and tank, 125 feet high, on a tract of ground 90 by 135 feet in area, owned by the city, and adjoining plaintiffs' lot. The tank is supported by six steel standards, held together by rods, braces and grillwork. There are two perpendicular pipes in the structure. Through one of them water is pumped into the tank, and through the other water is released from the tank. The structure is surrounded by a high woven-wire fence. No application was made for a permit to erect the structure, no hearing was had, and no permit to erect the structure was issued. Plaintiffs contend they have a cause of action for damages for noncompliance by the board of public utilities with the zoning ordinance.

While maintenance and operation of a water plant fall on the proprietary, rather than on the governmental side of municipal

power, the business has a distinct governmental aspect. Water is provided for protection against fire, for sanitary purposes, and for other purposes falling within police power.

It is difficult to say that, under the regime existing previous to enactment of the statute of 1929, the governing body of the city was required to make application to itself for a permit to erect a structure regarded as necessary to improve the water service. The term "public utility," as used in the zoning ordinance, doubtless applied to a public utility such as a privately owned water plant, and not to the city's own plant. In any event, the law of 1929, enacted some five years after the zoning ordinance became effective, authorized the board of public utilities to operate the water and light departments of the city in its own way without consulting anybody. Besides that, the law required that on request of the board of public utilities, it shall be the duty of the governing body to enact ordinances deemed necessary by the board for protection of the water and light plants. While it may be assumed the board of public utilities will act in a manner compatible, as far as possible, with the purpose of the zoning ordinance, the ordinance does not impose condition on exercise by the board of its best judgment with respect to what efficient water service demands.

Plaintiffs suggest in their brief that the court might take judicial notice of the fact there are bigger and better hills on which the tower and tank in question might have been located. The court cannot go that far, but if it could, it could not solve the engineering problem involved.

The result of the foregoing is, the tower and tank do not constitute an unlawful structure, and do not constitute a nuisance per se because of noncompliance with the zoning ordinance, and the question whether the city, acting in its proprietary capacity, has injured the plaintiffs' land in a manner giving rise to a cause of action for damages, is to be solved on common-law principles, without regard to the zoning ordinance.

The petition contained the following allegation:

"Prior to the construction of said water tower, the ninety-foot lot occupied by said tower was about two feet lower than the property of the plaintiffs, but in constructing same, defendants filled in and graded up with earth the ninety-foot lot on which said tower is constructed about two feet higher than plaintiffs' property, making a shed whereby the surface water will run from said ninety-foot lot upon the plaintiffs' property, endangering their property, and will cause their basement to be flooded."

Passing the fact that plaintiffs' land has not in fact been injured by diversion of surface water, the court knows of no rule of law requiring the city to maintain the level of its ground below the level of plaintiffs' ground, or at the level of plaintiffs' ground. Previous to elevation, the city's land was lower, in relation to plaintiffs' land; now plaintiffs' land is lower. Elevation of the city's land casts surface water on plaintiffs' land, and nothing else is involved.

Rain falls, snow melts, and surface water takes its vagrant way. It may not be accumulated by one owner and cast in volume or with force upon the land of another, but, generally speaking, consequence of retention, diversion, repulsion, or altered transmission, is not actionable injury, unless pursuant to statute relating to agricultural land and highways outside the boundaries of cities. (R. S. 24-105; *Liston v. Scott*, 108 Kan. 180, 194 Pac. 642.)

In the opinion in the case just cited appears the following quotation from the opinion in an earlier case:

"The landowner has the right to use and improve his own land for the purpose for which similar land is ordinarily used; and he may build upon it, or raise or lower its surface, even though the effect may be to prevent surface water, which before flowed upon it, from going upon it, or to draw from adjoining land surface water which would otherwise remain there, or to shed surface water over land on which it would not otherwise go." (p. 183.)

The limitation of use appearing in the first sentence of the quotation does not refer to interference with flow of surface water, and so far as that subject is concerned, a landowner may use and improve his own land for any lawful purpose to which it may be reasonably adapted.

The claim filed with the city was attached to the petition. The claim said that when the wind blows the tower causes a great noise which interferes with the quiet of the neighborhood. The petition itself, which may not enlarge, but may restrict the claim, says that on windy evenings the tower and fence produce a mournful noise in such volume as to destroy the peace and quiet of the neighborhood, preventing occupants of the premises from sleeping and getting their proper rest.

The court will not define the term "evening," nor the term "windy evening." When evening begins and when it ends may be somewhat indefinite. (Webster's New International Dictionary, second edition.) Except, perhaps, in wintertime, it is not a greatly extended period, and it may be that on windy evenings plaintiffs can, in the

interest of the general welfare, defer until ordinary bedtime exercise of their lawful privilege to devote themselves to restful slumber.

In this case the offending thing is sound. In the case of *Shepler v. Kansas Milling Co.*, 128 Kan. 554, 278 Pac. 757, the offending thing was light. Light reflected from tall grain tanks, painted white, prevented plaintiff from enjoying his front porch· on sunny afternoons. This court, reversing the judgment of the district court, held a demurrer to plaintiff's petition should have been sustained. The principles discussed and applied in the Shepler case apply in this case. Plaintiffs undertake to distinguish the Shepler case on grounds not made the basis of the decision.

Defendants cite the case of *Whitfield v. The Town of Carrollton,* 50 Mo. App. 98—a water-standpipe case. One paragraph of the syllabus reads:

"The erection by a city or by its license of a standpipe on a lot owned by it is not a nuisance, nor does it give a right of action to the adjoining lot owner."

Plaintiffs undertake to distinguish the case on the ground no zoning ordinance was involved. So far as it is relied on to constitute a cause of action, the zoning ordinance of the city of Kansas City has been eliminated from consideration in this case.

The appeal was consolidated for hearing in this court with appeals in the following cases:

"No. 32,420. Frank St. John et al., Appellees, v. Kansas City et al., Appellants.

"No. 32,421. Josephine Collins, Appellee, v. Kansas City et al., Appellants.

"No. 32,422. J. A. McConnell et al., Appellees, v. Kansas City et al., Appellants.

"No. 32,423. Kate McConnell, Appellee, v. Kansas City et al., Appellants."

In those cases the petitions undertook to state causes of action for damages for injury to real estate consequent on erection of the water tower and tank, and demurrers to the petitions were overruled.

Some of·the petitions alleged that if the tower and tank should collapse or should be blown down great destruction of property and loss of life would result from escape of water. No negligence in construction which might cause collapse was alleged, no lack in construction of strength to resist predictable wind was alleged, and injury was purely speculative. The decision in the case of *Whitfield v. The Town of Carrollton,* 50 Mo. App. 98, referred to above, dealt with somewhat similar allegations as follows:

"A petition that states that a standpipe, on account of its height and size and weight and the purpose for which it was to be used, was liable to be struck by lightning or blown over, but fails to charge that it was negligently constructed, and, therefore, dangerous, does not state a cause of action; and such allegation as that the water escaping from the standpipe renders the ground wet, soggy and unhealthy is so vague and indefinite as to state no actionable facts." (Syl.)

Statements in some of the petitions that the structure was unsightly did not constitute causes of action for damages.

The judgment in each case is reversed, and the cause is remanded with direction to sustain the demurrer to the petition.