## Hatfield Township *v.* Lansdale Municipal Authority, Appellant.

Argued January 6, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Aaron S. Swartz, III,* with him *High, Swartz, Childs & Roberts,* for appellants.

*William R. Cooper, II,* for appellees.

OPINION BY MR. JUSTICE COHEN, March 13, 1961:

This is an appeal from a decree of the Court of Common Pleas of Montgomery County in a class action brought in equity to enjoin the appellants, Lansdale Municipal Authority (hereinafter referred to as the Authority) from operating a well in Hatfield Township.

The appellees, individual neighboring property owners, claim that the operation of appellants' well during a trial run caused the dehydration of some of their wells and a diminution of water supply in others, and that continued operation of the well would seriously and permanently impair their water supply.

The lower court decreed that an injunction would be enforced unless certain conditions were met by the Authority. The conditions required that any present user or owner of a well within a radius of 1600 feet of the Authority's well could request to be connected to the proposed water line without cost, but they would pay for the water consumed.

The issues here on appeal are whether there is a right of absolute appropriation of percolating water, and, if not, is either a permanent injunction or an injunction conditioned on meeting specific prerequisites the proper remedy.

It is settled law in this state that, in derogation of the English rule of absolute appropriation, there is no absolute right to appropriate percolating waters for an unlawful purpose. Such an unlawful purpose includes the diversion for sale to others away from the land when such conduct impairs the supply of a well on the property of another. *Rothrauff v. Sinking Spring Water Company*, 339 Pa. 129, 14 A. 2d 87 (1940). This is referred to as the doctrine of reasonable user.

The Authority, by putting its well through a trial run under standards accepted by custom of the well drilling trade, demonstrated that the operation of the well during a normal trial period will cause immediate damage to the neighboring wells. Appellants claim that operation of the well at two-thirds of the intended normal rate will not be harmful to the neighboring wells, but there is no proof of this. The ap-

pellants cannot now expect a court to oversee reduced operation of the wells to determine if a satisfactory intermediate modus operandi could be settled upon within the limits of the reasonable user rule. Our courts are not equipped to handle such requests.

Nor can appellants succeed in persuading this court to adopt the western rule of apportionment by dividing the community's water supply into shares which will be satisfactory to all. That doctrine deviates from the English rule of absolute appropriation and was adopted because of the geographical and climatic differences between the arid western states and England, where water was plentiful. The Pennsylvania rule, as stated in the *Rothrauff* case, supra, lies somewhere between these two rules.

The problem of water supply is fast becoming a matter of great concern in Pennsylvania. It is not apocryphal to note that the super-abundance of water that we have enjoyed in the past may soon be reduced to mere adequacy as a result of industrial expansion, increased agricultural development and irrigation, and population growth. However, this is not now a matter for this Court, but one which should have our legislature's prompt consideration.

The lower court, mindful of the injury incurred on appellees, nevertheless took notice of the "municipal function and service performed by the Authority" and made the permanent injunction conditional upon appellant-Authority's joining to its system without cost all interested injured parties within a radius of 1600 feet. That court, relying on Restatement, Torts §§858-864 (1939), held that a court of equity in cases involving subterranean water rights could balance the needs of a total community affected by a permanent injunction against the property rights of the appellees. Actually, it was appellant-Authority who sub-

mitted the initial conditional plan which merely was modified and expanded by the court below. The determination of the lower court was well within the broad powers of a court of equity and will not be disturbed by our court.

Decree affirmed at appellants' cost.