# Wilkinsburg-Penn Joint Water Authority v. Churchill Borough, Appellant.

Argued October 12, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*T. W. Pomeroy, Jr.,* with him *N. K. Parker, Jr., John H. Elder, Jr.,* and *Kirkpatrick, Pomeroy, Lockhart & Johnson,* for appellant.

*Robert F. Banks,* with him *Elder W. Marshall, Charles I. Ziegler,* and *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY MR. JUSTICE COHEN, March 16, 1965:

This is an appeal by the defendant, Borough of Churchill, from the decree of the lower court restraining it "from interfering in any shape, manner, or form with the construction of the proposed 500,000 gallon elevated [water] tank at the site of Reservoir No. 5 as proposed by plaintiff, Wilkinsburg-Penn Joint Water Authority." The decree became absolute on April 8, 1964.

Plaintiff-appellee (Authority) is a joint municipal authority, incorporated by the Borough of Wilkinsburg and the Township of Penn Hills under the Municipal Authorities Act of 1945. Act of May 2, 1945, P. L. 382, §1 et seq., 53 P.S. §301 et seq. Its function is to provide public water service for consumption, health, and fire protection. Defendant-appellant (Borough) is a Borough, regulated by The Borough Code, Act of July 10, 1947, P. L. 1621, §1 et seq., 53 P.S. §45001 et seq. The Authority supplies water service to more than 20 boroughs and townships including defendant Borough.

In 1949, the Authority purchased a five or six acre tract of land in the Borough, on which it constructed a 10,000,000 gallon reservoir. The parties agree that for years preceding this litigation the Authority's water pressure has been inadequate to meet expanding needs in its "high service area,"[1] which includes defendant Borough. For some time the Authority has wanted to improve its service by building a 500,000 gallon elevated water tank on the same land in the Borough where the aforementioned reservoir is locat-

---

[1] A "high service area" is one which cannot be serviced by gravity flow from the Authority's primary reservoir.

ed. The Borough's zoning ordinances prohibit such a structure.[2] It further appears that, since 1954, the Borough has taken the position that the Authority should solve this service problem by a closed pressure pumping system which would not involve any structure that violates its zoning ordinances. The Authority, on the other hand, has continually maintained a decided preference for the elevated tank method of increasing pressure.

In 1954, the Authority requested a building permit for the aforementioned structure. It was denied as being in violation of the zoning ordinances. In 1959,

---

[2] Section 3301 of The Borough Code provides: "For the purpose of promoting health, safety, morals or the general welfare councils of boroughs are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, their construction, alteration, extension, repair, maintenance, and all facilities and services in or about such buildings and structures and percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes, and may also establish and maintain building lines and set back building lines upon any or all public streets." (53 P.S. §48301).

Section 3302 of The Borough Code provides: "(a) For any or all said purposes, the council may divide the borough into districts, of such number, shape, and area as may be deemed best suited to carry out the purpose of this article. Within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in another district." (53 P.S. §48302).

Section 3004 of The Borough Code provides: "The Council shall exercise the powers granted in this article by ordinance. . . ." (53 P.S. §48304).

The Borough's zoning ordinance went into effect in 1935 and has been amended several times. Since June 1, 1946, the land which the Authority purchased in 1949 and upon which it seeks to erect the water tank has been in a district where such water tanks are prohibited.

the Authority submitted another application for a permit, which again was denied. The Authority then appealed to the Borough's board of adjustment for a variance, which also was denied.[3] In June of 1961, the Authority applied again for a permit, which was refused; and again, the Authority appealed to the board of adjustment for a variance, which was also refused.

In 1961, after the Board refused the Authority's last request for a variance, the Authority filed a complaint in equity seeking to restrain the Borough from interfering with its proposed plan to construct an elevated water tank. Also, the Authority filed an appeal in the county court from the refusal of the Borough's board of adjustment to grant it a variance.[4] The ap-

---

[3] Section 3307 of The Borough Code, as amended, provides: "(a) The council may appoint a board of adjustment, and in regulations and restrictions adopted pursuant to the authority of this article may provide that said board of adjustment may in appropriate cases, and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained.

. . .

"(g) the board of adjustment shall have the following powers: . . . (3) To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." (53 P.S. §48307).

[4] Section 3307 of The Borough Code, as amended, provides: "(i) Any person aggrieved by any decision of the board of adjustment, or any taxpayer or any officer of the borough, may within thirty days after such decision of the board appeal to the court of common pleas of the county by petition, duly verified, setting forth that such decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and specifying the grounds upon which he relies.

"(j) [provides for certification of record from board to court]

. . .

peal from the board of adjustment was continued because of the pendency of the action in equity.

The Authority's complaint in equity averred, inter alia, that the Borough was threatening to forcibly restrain it from erecting the water tower (presumably by enforcing the criminal provisions of the zoning ordinance), that such threat was interfering with its proposed plans, and that such interference was wrongful and should be enjoined because the Authority was "not subject to defendant's zoning power with respect to the erection of the proposed water tower." The Borough filed preliminary objections urging that the complaint be dismissed because the Authority failed to pursue its statutory remedies,[5] to wit, the appeal it had taken to the county court from the refusal by the board of adjustment to grant a variance.

The Authority contended before the lower court that, because of the provisions of the Municipal Authorities Act of 1945, as amended, it was not subject to the zoning article of The Borough Code and consequently need not pursue the procedure set forth therein. The provisions relied upon by the Authority grant it the power "to determine by itself exclusively the services and improvements required to provide adequate, safe and reasonable service," with the right to challenge the "safety and reasonableness of the Authority's services . . . in the court of common pleas" which has "exclusive jurisdiction to determine all such questions involving rates or service."[6]

---

"(1) If upon the hearing of the appeal it shall appear to the court that testimony is necessary for the proper disposition of the appeal, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court, with his findings of facts and conclusions of law. The court may reverse, or affirm, in whole or in part, or may modify the decision appealed from as to it may appear just and proper." (53 P.S. §48307).

[5] See footnote 4, supra.

[6] Act of May 2, 1945, P. L. 382, §4, as amended, 53 P.S. §306B(h).

The sole question raised by the complaint and preliminary objections was whether the jurisdiction over the conduct of the Authority created by the Municipal Authorities Act precluded the exercise of the Borough's zoning jurisdiction over the Authority's property. If the lower court had decided that the Borough was so precluded it should have entered the injunction forthwith because, in such event, the only relief from the Authority's conduct would be by way of appeal under the Municipal Authorities Act. If, on the other hand, the lower court had decided that the Borough was not so precluded it should have dismissed the complaint, because, in such event, the only relief from the Borough's conduct would be by way of appeal from the board of adjustment's refusal to grant a variance.

However, the lower court, en banc, took neither of these courses. Instead, it decided that the basic question before it was a factual one, to wit, whether or not the proposed water tank was a necessary and proper exercise of discretion on the part of the Authority. Moreover, it decided that under the Municipal Authorities Act it had exclusive jurisdiction over this issue. Accordingly, it dismissed the preliminary objections, had a trial on the aforesaid issue, resolved it favorably to the Authority, granted the injunction prayed for, and dismissed exceptions to the adjudication.

In our opinion, the necessity or propriety of the Authority's water tank was not properly an issue before the lower court. The basic error pervading the proceedings below was the failure of the lower court to find, as a matter of law, after the complaint and preliminary objections, that the property owned by the Authority is not immune from the zoning power of the Borough. Accordingly, the complaint should have been dismissed, because relief from the decisions of the zoning authorities, with respect to property over which

they have jurisdiction, can be obtained only through the statutory procedures provided for the purpose. *Jacobs v. Fetzer*, 381 Pa. 262, 112 A. 2d 356 (1955).

As we said in *White Oak Borough Authority Appeal*, 372 Pa. 424, 93 A. 2d 437 (1953), where the conflict was between a water authority organized under the Municipal Authorities Act and the city of McKeesport, the parties "have only the power and authority granted them by enabling statutory legislation." *Id.*, at p. 427. In other words, the problem raised is one of statutory interpretation.

First, under The Borough Code the express jurisdictional base for the exercise of the zoning power is all the real property in the borough. It is provided that: "(a) For any or all said purposes, the council may divide the Borough into districts. . . . Within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures, or land." Nowhere in The Borough Code is the property owned by an Authority expressly excepted. Therefore, such property is subject to the jurisdiction of the zoning authorities unless an exception is provided by inference either from The Borough Code or the Municipal Authorities Act or some other legislative expression.

The Authority contends that the Municipal Authorities Act, which gives it the power to determine its services exclusively, with right of appeal confined to the court of common pleas,[7] provides the necessary inference. It is argued that if the zoning power were applicable it would interfere with the Authority's power to exclusively determine its services, contrary to legislative intention. The argument is fallacious. When the Borough enacts and administers its zoning ordinances it is not "determining" the Authority's serv-

---

[7] See footnote 6, supra, and text thereat.

ices. The zoning ordinances are simply part of the law of property use. Like all law it has impact on the conduct of human affairs including the Authority's service decisions. In *Hatfield Township v. Lansdale Municipal Authority*, 403 Pa. 113, 168 A. 2d 333 (1961), we held that a water authority organized under the Municipal Authorities Act was subject to the doctrine of reasonable use of percolating waters, but it could not be persuasively maintained that the application of the doctrine violated the Authority's right to determine its services. As was said in *Yezioro v. North Fayette County Municipal Authority*, 193 Pa. Superior Ct. 271, 285, 164 A. 2d 129, 137 (1960), the word "exclusively" was simply intended "to make it clear that the authority itself, not the creating municipality or some other instrumentality, controlled the initial determination of the services." The initial service decisions remain with the Authority, but they must be made within the framework of other applicable laws, unless the Legislature directs otherwise. Cf. *Kingston Borough v. Kalanosky*, 155 Pa. Superior Ct. 424, 38 A. 2d 393 (1944).

Second, The Borough Code contains one express exemption for buildings or extensions "thereof used or to be used by public utility corporations, if upon petition of the corporation, the Public Utility Commission shall, after a public hearing, decide that the present or proposed situation of the building in question is reasonably necessary for the convenience or welfare of the public."[8] The Public Utility Law provides that

---

[8] 53 P.S. §48309. Cf. the corresponding provision of the Third Class City Code: "The Public Utility Commission, upon petition of a public utility company and after a public hearing, may determine that a building, structure or use of the company, present or proposed, which is or would be violative of the zoning ordinance, is reasonably necessary to the welfare of the public; and in such case the zoning ordinance shall not apply to the building structure or

municipal water authorities are not "public utilities."[9]
Our Statutory Construction Act provides that "[e]x-
ceptions expressed in a law shall be construed to ex-
clude all others," Act of May 28, 1937, P. L. 1019, §54,
46 P.S. §554, "unless the application of such rul[e]
would result in a construction inconsistent with the
manifest intent of the legislature." Id., §31, 46 P.S.
§531. We do not perceive any such inconsistency
here.

Third, as "[e]very law shall be construed, if possi-
ble, to give effect to all its provisions," Id., §51, 46 P.S.
§551, so too should statutes be correlated to give the
fullest scope to the various objectives envisaged by the
Legislature. The purpose of and statutory scheme for
regulating a municipal water authority compared with
the purpose of and statutory scheme for regulating the
Borough's zoning power supports the conclusion that
the legislative objectives will be more fully attained if
the Authority is subject to the zoning power of the
Borough.

The Municipal Authorities Act and the Borough
zoning power have the same general objectives, name-
ly, to promote the health, safety and welfare of the
people.[10] But the provision of The Borough Code which

---

use in question." Act of June 23, 1931, P. L. 932, §4107, added 1951,
June 28, P. L. 662, §41, 53 P.S. §39107.

[9] Section 2, the definitional section of the Public Utility Law,
provides that " 'Public Utility' means persons or corporations . . .
operating . . . facilities for: . . . (b) . . . distributing . . . water
to . . . the public. . . ." But "corporation" is defined to exclude
"municipal corporations." And "municipal corporations" is de-
fined to include "any public . . . authority . . . created . . . under
any law of this Commonwealth for the purpose of rendering any
service similar to that of a public utility." Act of May 28, 1937,
P. L. 1053, §2, 66 P.S. §1102.

[10] The Municipal Authorities Act states that its purpose is "to
benefit the people of the Commonwealth by, among other things,
increasing their commerce, health, safety, and prosperity. . . ."

sets forth the specific objectives of the zoning power provides that zoning "regulations shall be made in accordance with a *comprehensive plan,* and designed to lessen congestion in the streets, *to secure safety from fire panic and other dangers,* to promote health and general welfare, to provide adequate light and air, to prevent the overcrowding of land, to avoid undue concentration of population, to *facilitate adequate provision of* transportation, *water,* sewerage, schools, parks, and other public requirements." (Emphasis supplied). (53 P.S. §48303). This provision indicates that the objectives of zoning regulation are more comprehensive than and, in fact, include the objectives of the water Authority. Correspondingly, to be valid, the zoning power must be exercised with due regard for the statutory requirement of "facilitat[ing] adequate provision of . . . water. . . ." On the other hand, the direction in the Municipal Authorities Act that the Authority must provide "adequate, safe and reasonable service"[11] would not require the Authority to make its service determinations with due regard to the comprehensive objectives of zoning, even if it had the ability to do so. Accordingly, the objectives of both statutes can be secured only if the Authority's land is subject to the Borough's zoning power. Thus, all rules of proper statutory construction lead to the same result.

The lower court and the Authority place great reliance on *Duquesne Light Co. v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287 (1954). There, by enforcing its zoning ordinances, the township was prohibiting the building of certain power transmission

Act of May 2, 1945, P. L. 382, §4, 53 P.S. §306. The grant of zoning power in The Borough Code states that its general purpose is to promote the "health, safety, morals or general welfare. . . ." (53 P.S. §48301).

[11] See footnote 6, supra.

lines. We held that a public utility, regulated by the Public Utility Commission, was not subject to the zoning power of a first class township because, otherwise, "townships, together with the Commission, and not the Commission alone, would regulate public utility companies." Id., at p. 334. The Authority argues that, by analogy, when the Legislature granted regulatory power over it to the common pleas courts it thereby intended to insulate it from the impact of zoning regulation. The analogy is not well drawn.

The Legislature has granted to the P.U.C. a vast and detailed, albeit not unlimited, regulatory authority over the services and facilities of public utilities. It is armed with the powers to initiate proceedings on its own motion and to issue detailed orders and regulations, and the utility must bear the burden of proof against it.[12] The regulatory power in the hands of

---

[12] The P.U.C. has "general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth." Act of 1937, May 28, P. L. 1053, §901, 66 P.S. §1341.

"Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary for the accommodation, convenience, and safety of its patrons, employees, and the public. . . . *Such service and facilities shall be in conformity with the regulations and orders of the Commission.*" (Emphasis supplied). Id., §401, 66 P.S. §1171.

"The Commission may, after reasonable notice and hearing, *upon its own motion or upon complaint, prescribe as to service and facilities, . . . just and reasonable standards, classifications, regulations, and practices to be furnished, imposed, observed, and followed by any or all public utilities.*" (Emphasis supplied). Id., §412, 66 P.S. §1182.

"Whenever the Commission, after reasonable notice and hearing, upon *its own motion or upon complaint*, finds that the service or facilities of any public utility are unreasonable, unsafe, inadequate, insufficient, or unreasonably discriminatory, or otherwise in violation of this Act, *the Commission shall determine and prescribe,*

the common pleas courts over the conduct of authorities formed under the Municipal Authorities Act is not comparable to the P.U.C.'s power over public utilities.[13] The common pleas courts have no power of inquiry on their own motion, nor do they have power or the required staff necessary to prescribe rules and regulations governing the conduct of authorities. Moreover, the party attacking the conduct of an authority must not only bear the burden of proof but also must show that the authority acted in an arbitrary or capricious manner or abused its discretion. See *Hyam v. Upper Montgomery Joint Authority*, 399 Pa. 446, 454, 160 A. 2d 539, 544-545 (1960), and *Lakemont Civic Association, Inc., v. Central Blair County Sanitary Authority*, 199 Pa. Superior Ct. 125, 130, 184 A. 2d 301, 303-304 (1962). Clearly, these are not the standards applicable when the P.U.C. reviews the conduct of public utilities. Accordingly, since the Legislature has not developed a system of regulation of Municipal Authori-

---

by regulation or order, the reasonable safe, adequate, sufficient, service or facilities to be observed, furnished, enforced, or employed, including all such repairs, changes, alterations, extensions, substitutions, or improvements in facilities as shall be reasonably necessary and proper for the safety, accommodation, and convenience of the public, and shall fix the same by its order or regulation." (Emphasis supplied). Id., §413, 66 P.S. §1183.

"In any proceeding upon the motion of the commission, involving service or facilities of any public utility, *the burden of proof* to show that service and facilities involved are adequate, efficient, safe, and reasonable *shall be upon the public utility.*" (Emphasis supplied). Id., §420, 66 P.S. §1190.

"In addition to any powers hereinbefore expressly enumerated in this Act, the Commission shall have full power and authority, and it shall be its duty, to enforce, execute, and carry out, by its regulations, orders, or otherwise, all and singular the provisions of this act, and the full intent thereof, and shall have the power to rescind or modify any such regulations or orders." Id., §902, 66 P.S. §1342.

[13] See text at footnote 6, supra.

ties that is nearly so detailed and broad as the regulation of public utilities there is no necessary inference, as there was in *Duquesne*, that the Legislature intended to insulate them from any impact that zoning might have on their conduct, in deference to another regulatory body.

Further, in *Duquesne*, there were two express indications by the Legislature that the zoning power should not impinge upon the P.U.C.'s regulation of public utilities. Section 3110 of The First Class Township Code (the statute involved in *Duquesne*) provides that the zoning article shall not apply to any existing or proposed building or extension thereof, used or to be used by a public service corporation if the P.U.C. decides that the situation of the building is reasonably necessary for the convenience or welfare of the people.[14] (53 P.S. §58110). Section 3502 of that Code provides "[t]his Act shall not repeal or modify any of the provisions of the Public Utility Law. . . ." (53 P.S. §58502). No corresponding legislative intent appears in The Borough Code in regard to the common pleas courts' regulation of municipal authorities.

The Authority further contends that a local zoning authority will necessarily zone with a "local eye" while the Authority may operate in many jurisdictions. This problem is of no moment for, as we have explained above, the zoning power must be exercised so as to "facilitate the adequate provision of . . . water . . . ." The propriety of the specific exercise of the zoning power, in light of the functions and requirements of the Authority, may be judicially tested, should the Authority feel dissatisfied. Moreover, the converse of the Authority's argument rings more true, to wit, that

---

[14] This section alone could not be relied upon in *Duquesne* for the result reached there because "buildings" were not involved. Compare the corresponding provision in The Third Class City Code, footnote 8, supra.

the Authority's "eye" in placing its facilities will not or cannot properly regard zoning objectives. All that we decide today is that the property owned by the Authority is subject to the zoning power of the Borough. Whether that power is being properly exercised is another question and must be decided within the statutory framework provided for that purpose.

Accordingly, the decree of the lower court is vacated and the complaint dismissed. Costs on appellee.

Mr. Chief Justice BELL and Mr. Justice MUSMANNO dissent.