No. 87-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

DOUG L. HAGFELDT and ANNETTE E. HAGFELDT,

Plaintiffs and Appellants,

-vs-

CITY OF BOZEMAN, MONTANA,

Defendant and Respondent.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Ben Berg, Jr., Berg, Stokes, Tollefsen & Hayes, P.C.;
Bozeman, Montana

For Respondent:

Sarah M. Power, Gough, Shanahan, Johnson & Waterman;
Helena, Montana

_____

Submitted on Briefs: February 18, 1988

Decided: April 25, 1988

Filed: APR 2 5 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order of the Eighteenth Judicial District Court, Gallatin County, granting the City of Bozeman's (City) motion for summary judgment on grounds it sufficiently complied with statutory mandate in this class action claim brought by a number of Bozeman landowners (Landowners). We affirm.

The only issue for consideration is whether the City legally complied with the requirements of § 76-2-402, MCA (1987), when it constructed a water tank contrary to its zoning regulations.

Both parties agree there is no question of fact and summary judgment is appropriate as a matter of law. This appeal is based on the contention that the District Court should have granted the Landowners' motion for summary judgment rather than the City's.

In April of 1985, the City began construction on a water tank in Josephine Park in Bozeman, Montana. This park is located in an area known as Graf's First Subdivision, Second Filing. The surrounding neighborhood and the land on which the tank was constructed are zoned R-2, single family dwellings and other permitted and conditional uses.

The record indicates that a public hearing was held before the Bozeman City-County Planning Board to review the preliminary plat of Graf's First Subdivision, Second Filing, on February 10, 1983. At this hearing, the public was notified that the City planned to construct the water storage facility involved in this action.

Plaintiffs are a number of landowners who live close to the area where the water tank was constructed. Landowners

claim the City constructed the tank in violation of zoning regulations and because of this construction, the value of their property decreased. To support its defense, the City argues it is exempt from zoning regulations and relies on § 76-2-402, MCA, which provides as follows:

Whenever an agency proposes to use public land contrary to local zoning regulations, a public hearing, as defined below, shall be held.

(1) The local board of adjustments, as provided in this chapter, shall hold a hearing within 30 days of the date the agency gives notice to the board of its intent to develop land contrary to local zoning regulations.

(2) The board shall have no power to deny the proposed use but shall act only to allow a public forum for comment on the proposed use.

Of further importance is the definitional section for this statute, § 76-2-401, MCA, which provides:

As used in 76-2-402, the following definitions apply:

(1) "Agency" means a board, bureau, commission, department, an authority, or other entity of state or local government . . .

Landowners claim that under § 76-2-402, the City had an obligation to hold a public meeting prior to commencement of the April, 1985 construction of the water tank. Landowners claim the language "proposes to use" and "intent to develop" shows the statute cannot be applied in a retroactive fashion.

The City attached affidavits to its memorandum in support of its motion for summary judgment showing it held a public meeting on June 24, 1985. It claims the meeting was

sufficient to satisfy the statutory mandate and, nonetheless, it is exempt from any ordinance because of the legislative intent and history of § 76-2-402, MCA. Alternatively, the City claims the action is barred under the provisions of § 2-9-111, MCA, because it is a governmental entity "immune from suit for an act or omission of its . . . member, officer, or agent" of the legislative body.

These claims raise interesting points that have not been addressed by this Court. Landowners rely on two cases. In Rich v. City of Englewood (Colo. 1983), 657 P.2d 961, the Colorado Court of Appeals affirmed an injunction prohibiting the construction of a water tank that did not comply with local footage setback requirements. That decision, however, specifically points out that "an injunction is an appropriate remedy for violations of zoning ordinances." Rich, 657 P.2d at 962. Here, it is unclear what remedy the Landowners seek. There is no prayer for damages in the complaint and injunctive relief is not sought. Further, the reasoning in Rich was questioned by the Colorado Supreme Court in the subsequent case of City of Englewood v. Rich (Colo. 1984), 686 P.2d 780, because the Englewood City Council amended its zoning ordinance expressly exempting the city from the zoning regulations thereby making the issue moot according to the court.

The second case cited by Landowners, Hunke v. Foote (Idaho 1962), 373 P.2d 322, was a proceeding by residents for a writ of mandamus to force the city to remove an electrical substation that the city constructed in violation of its zoning ordinances. The Idaho Supreme Court applied a "governmental-proprietary" function distinction and denied the city an exemption from the zoning ordinance. The court stated "[w]hen operating in its proprietary capacity a

4

municipal corporation is subject to the same burdens, responsibilities and liabilities as a private corporation or individual acting in the same capacity." Hunke, 373 P.2d at 323. We find the rationale of these cases insufficient to decide the issue before us.

Much has been written concerning exemption of a governmental agency from zoning ordinances although the vast majority of legal prose has dealt with two opposing governmental agencies, one of which wishes to be exempt from the other's zoning requirements. See 2 Anderson, American Law of Zoning, §§ 12.02-12.04 (3d ed. 1986); Note, Governmental Immunity from Zoning, 22 B.C.L.Rev. 783 (1980-81); Note, Governmental Immunity From Local Zoning Ordinances, 84 Harv.L.Rev. 869 (1971). A survey of the case law in existence unfurls four basic theories by which courts of this country have addressed this issue.

The general rule is that municipalities are granted exemption from zoning ordinances in modulating degrees depending on the theory of exemption of the jurisdiction. 82 Am.Jur.2d, Zoning and Planning §§ 149, 150, 152 and 153 (1976) indicates that municipalities are exempt: (1) by express language in the ordinance itself; (2) by immunity of the sovereign from suit; (3) by the distinction between the entity exercising a governmental or proprietary function; and (4) by the doctrine of eminent domain. In application of any of these tests, as the commentators have complained, problems are rampant.

The governmental-proprietary distinction test is most prevalent, but it is not without fault.

> "Governmental functions" are those conferred or imposed upon the municipality as a local agency of limited and prescribed jurisdiction to be

5

> employed in administering the affairs of the state and promoting the public welfare . . . When a municipal corporation engages in an activity of business, rather than one of a governmental nature, such as the supply of light or water or the operation of a railroad which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity [proprietary].

State ex rel. Gebhardt v. City Council of Helena (1936), 102 Mont. 27, 35-36, 55 P.2d 671, 675.

This distinction has been criticized as oversimplistic and illusory. The wisdom of the governmental-proprietary function test is subject to question. City of Temple Terrace v. Hillsborough Ass'n for Retarded Citizens (Fla. 1975), 322 So.2d 571, 577, aff'd (Fla. 1976), 332 So.2d 610; Township of Washington v. Village of Ridgewood (N.J. 1958), 141 A.2d 308. 2 Anderson, *American Law of Zoning*, § 12.03, pp. 481-482 (1986) accurately shows the problem with the proprietary-governmental distinction, especially as it applies to the issue we are faced with here:

> A municipality may carry out its governmental functions without regard to zoning restrictions, but it is subject to such restrictions when it is engaged in a proprietary function. The great difficulty lies in determining which functions are governmental, and which are proprietary. The distinction is of ancient vintage, but it is neither clear nor stable. What is regarded as governmental for one purpose . . . is not necessarily so regarded for a different purpose. And a proprietary function of a municipal government of 1955 may become a governmental function in 1965 . . . A North Carolina court held that the erection of a water tank is a governmental function which may be

6

carried out without regard to local zoning regulations. The same result was reached by the Supreme Court of Kansas, with some aid from a state statute. The courts of Alabama, Florida, Illinois, Michigan and Pennsylvania have described the municipal water service as a proprietary function which must be carried out consistently with the municipal zoning regulations. See McKinney v. High Point (N.C. 1953), 74 S.E.2d 440; Puhr v. Kansas City (Kan. 1935), 51 P.2d 911; Water Works Board v. Stephens (Ala. 1955), 78 So.2d 267; Treasure Island v. Decker (Fla. 1965), 174 So.2d 756; Baltis v. Westchester (Ill. 1954), 121 N.E.2d 495; Taber v. Benton Harbor (Mich. 1937), 274 N.W. 324; Wilkinsburg-Penn Joint Water Authority v. Churchill (Pa. 1965), 207 A.2d 905.

The proprietary-governmental function distinction has also been criticized as being irrelevant because the immunity concept was developed only to limit a governmental entity's exposure in tort and has been held to be inapplicable in zoning cases. City of Fargo, Cass County v. Harwood Township (N.D. 1977), 256 N.W.2d 694; Seward County Board of Commissioners v. City of Seward (Neb. 1976), 242 N.W.2d 849. This distinction is archaic and muddled and no creative argumentation should convince us to continue to apply the governmental-propietary function analysis.

The City argues in this case that it is exempt from the zoning regulations under the theory of immunity pursuant to § 2-9-111, MCA, making any "governmental entity" immune. Section 18, Article II of the Montana Constitution and § 2-9-102, MCA, express the policy that governmental immunity is not favored in this state. Our legislature, however, has enacted § 2-9-111, MCA, and for us to totally disregard the City's claim that it is immune would be remiss on our part.

7

Nonetheless, under the facts of this case and in light of § 76-2-402, MCA, we will not determine this case soley by granting the City blanket immunity.

The common law sovereign-immunity rule has been addressed a number of times by state courts only occasionally resulting in allowances of agencies' uses in contravention of municipal zoning ordinances. City of Richmond v. Board of Supervisors (Va. 1958), 101 S.E.2d 641; Aviation Services, Inc. v. Board of Adjustment (N.J. 1956), 119 A.2d 761. Generally, however, this rule has been implemented where there are two separate governmental entities, one being "superior" to the other. The test has been widely criticized because it fails to recognize that municipalities are acting as agents of the state under state enabling acts and further does not provide a feasible means to determine which agent should prevail where "there are overlapping and conflicting territorial jurisdictions." Note, Governmental Immunity From Local Zoning Ordinances, 84 Harv.L.Rev. at 877.

Critiques such as these have prompted many courts over the last several years to question seriously the continued viability of the sovereign-immunity rule in today's highly urbanized society. The reasoning of the court in City of Temple Terrace, supra, 322 So.2d at 578-579, is most compelling.

> The old tests were adopted at a time when state government was much smaller. The myriad of agencies now conducting the functions of the state have necessarily resulted in a diminution of centralized control. The decision of a person administering an outlying function of a state agency with respect to the site where this function should be performed is not necessarily any better than the decision of the local authorities on the subject of land use. * * *

> Our burgeoning population and the rapidly
> diminishing available land make it all
> the more important that the use of land
> be intelligently controlled. This can
> only be done by a cooperative effort
> between interested parties who approach
> their differences with an open mind and
> with respect for the objectives of the
> other.

Blackstone Park Improvement Ass'n, et al. v. State of Rhode Island (R.I. 1982), 448 A.2d 1233, 1237-1238.

Generally, even where governmental immunity is found, it should not be exercised in a fashion that is unreasonable and arbitrarily overrides all important legitimate local interests. Blackstone, supra, 448 A.2d at 1239. There are in this case important, legitimate local interests that should be considered and to blindly adopt the immunity claimed by the City would be to entirely disregard these concerns.

Further, the language of City of Temple, supra, dealt largely with the question of two governmental entities and is extremely close to the test of eminent domain. The rationale for the eminent domain test is the presumption that the legislature's grant of such power conclusively establishes the governmental entity's superiority where its proposed land use runs counter to local zoning provisions. Blackstone, 448 A.2d at 1238, e.g., City of Kirkwood v. City of Sunset Hills (Mo.Ct.App. 1979), 589 S.W.2d 31; Mayor of Savannah v. Collins (Ga. 1954), 84 S.E.2d 454. This test likewise disregards the important local concerns of development in a modern society and we choose not to adopt it here.

The Blackstone court noted that all of the traditional tests are flawed because "they are overly simplistic and often lead to resolution of a multifaceted zoning-conflicts

issue through the use of conclusive labels rather than through perceptive adjudication." Blackstone, 448 A.2d at 1238; citing Brownfield v. State (Ohio 1980), 407 N.E.2d 1365, 1367-1368, overruled on other grounds, 503 N.E.2d 1025, 1028; Brown v. Kansas Forestry, Fish and Game Commission (Kan. 1978), 576 P.2d 230, 232.

The more enlightened test, adopted in Blackstone and followed by a number of jurisdictions involves the so-called "balancing-of-interest" analysis developed by the New Jersey Supreme Court and the Minnesota Supreme Court at approximately the same time. Town of Oronoco v. City of Rochester (Minn. 1972), 197 N.W.2d 426; Rutgers State University v. Piluso (N.J. 1972), 286 A.2d 697. The test is best laid out in Rutgers, 286 A.2d at 702 and first requires an analysis of legislative intent. The Rutgers court stated that this intent may be obscured but can be discerned from consideration of the following factors: (1) the nature and scope of the instrumentality seeking immunity; (2) the kind of function or land use involved; (3) the extent of the public interest to be served; (4) the effect local land-use regulations would have upon the enterprise concerned; and (5) the impact upon legitimate local interest.

Oronoco, supra, and Rutgers, supra, can be distinguished from the case at bar because both dealt with competing governmental entities. In Oronoco, the question was whether the city of Rochester was exempt from the zoning requirements of Oronoco in the development of a sanitary landfill to benefit the town of Rochester but located in the township of Oronoco. Rutgers involved competing governmental entities in the form of the state university which wished to alleviate a shortage of education facilities by expanding a 500-unit ceiling for student housing which was in violation

10

of the local municipal zoning ordinance. In both cases, the courts allowed the exemption. The Rutgers court stated that in some cases the "broader public interest is so important that immunity must be granted even though the local interests may be great." Rutgers, supra, 286 A.2d at 703. However, the court cautioned that immunity was not completely unleashed:

> Even where [immunity] is found to exist, it must not * * * be exercised in an unreasonable fashion so as to arbitrarily override all important legitimate local interests. This rule must apply to the state and its instrumentalities as well as to lesser governmental entities entitled to immunity. * * * And, at the very least, even if the proposed action of the immune governmental instrumentality does not reach the unreasonable stage for any sufficient reason, the instrumentality ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible. (Emphasis added.)

Rutgers, 286 A.2d at 703.

The "balancing-of-interests test," as the Blackstone court noted, has been followed in Florida, Hawaii, Kansas, Michigan, Minnesota, North Dakota, Ohio, Pennsylvania, and South Dakota. Citing cases, Blackstone, supra, 448 A.2d at 1239. We feel that this is the most enlightened approach to this complex question. We recognize also that these courts have adopted the "balancing-of-interests test" in cases involving competing governmental entities. However, due to the existence of § 76-2-402, MCA, and its mandate to merely provide a public forum, and the distinguishable nature of this case where we have a communities' own citizens

11

challenging the City for violating its own zoning ordinance, we need not apply the "balancing-of-interests test" in this case.

As suggested in Rutgers, the legislative intent of the statute in question, § 76-2-402, MCA, will first be considered. Landowners argue that the language "whenever an agency proposes to use public land contrary to local zoning regulations," and the fact that the board of adjustments can only act upon notice of the agency's "intent to develop land contrary to local zoning regulations" shows the statute contemplates approval of future action. The City claims the language requires only that a public hearing be held by the local board of adjustments within thirty days of the date the agency gives notice to the board of its intent to develop the land contrary to the zoning regulations.

The City points to the affidavits attached to its motion for summary judgment showing that the board of adjustments did hold the hearing within thirty days of the date the board was given notice of the City's intent. Additionally, the City points out, and a reading of subsection (2) shows, the board of adjustments has no power to deny the proposed use but rather is only required to provide a public forum for comment.

The City additionally argues that the legislative intent can be gleaned from the legislative history which shows that the bill which ultimately became § 76-2-402, MCA, was originally introduced entitled: "An act requiring land development and use by governmental agencies to conform to local zoning regulations." The bill was finally passed entitled: "An act requiring land development and use by governmental agencies to be subject to public hearing." Therefore, the City claims, the end result was that the

12

legislature recognized that government agencies are not subject to zoning regulations.

We do not conclude that the intent of the legislature is clear merely by the changing of the title of the bill. However, we do affirm the ruling of the District Court in this case. The District Court properly noted that a reading of § 76-2-402, MCA, shows that "[w]hether the use is proposed or construction underway, an analysis of Montana's zoning law discloses that a municipality's construction of a service facility which does not comply with the zoning ordinances is subject only to public comment and not prohibition by the Board of Adjustment."

Whenever this Court determines legislative intent, we look first to the plain meaning of the words used in the statute. W. D. Construction, Inc. v. Bd. of County Comm. of Gallatin County (Mont. 1985), 707 P.2d 1111, 1113, 42 St.Rep. 1638, 1641; Dorn v. Bd. of Trust. of Billings Sch. Dist. (1983), 203 Mont. 136, 144, 661 P.2d 426, 430. The issue presented is disposed of by the very terms of § 76-2-402, MCA. The section requires only an opportunity for a public forum, it does not give power to the board of adjustments to disallow any governmental action. The record shows the public was allowed the opportunity to present complaints at the June 24, 1985 meeting. The hearing was held, the public was allowed to comment. No governmental violation of § 76-2-402, MCA, occurred and therefore no governmental entity committed an act or omission giving rise to a cause of action.

We do not accept the caselaw cited by the Landowners because it turns on the antiquated and confusing proprietary-governmental function test. Further, we do not solely decide this case on the City's claim that it is immune

13

from the ordinance merely because of its status as a governmental entity under § 2-9-111, MCA.

We note that the Landowners, to present the issue before the District Court regarding the City's action in this case, could have attempted to attain injunctive relief. See, Rich, supra, 657 P.2d at 962. The actions of the City, nonetheless, were not in violation of the law as it was required only to provide notice to the board of adjustments which provided the public hearing.

We affirm.

_L. C. Gulbrandson_,
Justice

We concur:

_J. A. Turnage_
Chief Justice

_John Conway_

_Fred J. Weber_

_William E. Hunt_

Justices

_R. C. McDonough_

Justices

14

Mr. Justice John C. Sheehy, dissenting:


If the reader, having read the foregoing opinion, understands its reasoning, he or she may step to the head of the class. After giving judicial blessing to the balancing of interests tests of Oronoco and Rutgers, the opinion declines to apply them and then partly applies them; it chides the landowners for not seeking injunctive relief, and then tells them no injunctive relief was possible; it refuses to grant immunity from zoning regulations to cities, but grants it; and it sweeps away as "antiquated," without any necessity, the distinction between proprietary and governmental functions of municipalities. It tells the cities they are subject to their own zoning regulations, and then tells them they are not. The landowners here are even deprived of a right to question any abuse of discretion by the city, a right of landowners surely should have under an action for a writ of review.

It is a farce to uphold a statute that guarantees a public hearing on an issue, but which statute also provides that the hearing is purposeless, of no account, a mere exercise in hearings. Who needs the exercise?

Moreover, the statement of facts by the majority is not clear. The first notice to landowners that the city disregarded its own zoning regulations was when the city commenced building the water tank in April, 1985. It was not until June, 1985, that the city provided the public hearing required by § 76-2-402, MCA. A hearing after the fact is even more of a farce.

I dissent. I would reverse the summary judgment.

_____
Justice