174 So.2d 756 (1965)
CITY OF TREASURE ISLAND, Florida, a municipal corporation, Appellant,
v.
Walter B. DECKER, D.O. Bauldree, Joseph W. Fleece, Jr., F. Marion Harrelson, and David F. Robinson, as and constituting the Board of Adjustment of the City of St. Petersburg, Florida, and the City of St. Petersburg, Florida, a municipal corporation, Appellees.
No. 4689.
District Court of Appeal of Florida. Second District.
May 7, 1965.
*757 Louis C. Deal, of Robinson, Robinson & Deal, St. Petersburg, for appellant.
Carl R. Linn and Harry I. Young, St. Petersburg, for appellees.
*758 SMITH, Chief Judge.
The City of Treasure Island appeals a final judgment denying certiorari in which that city sought to quash a decision of the Board of Adjustment of the City of St. Petersburg which denied Treasure Island's application for a permit to erect a toll gate and toll collection booth to be located on a part of Treasure Island Causeway that extends into the City of St. Petersburg. The proceeding in the Circuit Court was in the nature of a trial de novo, Josephson v. Autrey, Fla. 1957, 96 So.2d 784, and is reviewable here by appeal. Board of Adjustment of City of Ft. Lauderdale v. Kremer, Fla.App. 1962, 139 So.2d 448.
In 1937 pursuant to statutory authority[1] the City of Treasure Island constructed Treasure Island Causeway, a toll road and drawbridge facility, across Boca Ciega Bay connecting the Cities of Treasure Island and St. Petersburg. The project was financed by the issuance of revenue bonds. The two cities have a common corporate boundary located in the center of the channel of the intercostal waterway in the bay. Approximately the eastern half of the causeway lies within the corporate limits of St. Petersburg. From the time of construction a single toll facility has been maintained on the causeway at approximately the common boundary line of the two cities. This permitted the residents of each city to use that portion of the causeway on either side of the toll facility on a turn-around basis without passing through the toll collection point. The erection of the toll gate sought in the permit would permit the collection of tolls on part of the causeway in St. Petersburg from those who had heretofore avoided[2] payment of tolls, but on the other hand it would interfere with the flow of traffic on the streets of the City of St. Petersburg.
The charter of the City of Treasure Island specifically grants unto that city the power to build bridges leading from that city across any body of water to the other shore within Pinellas County within or without the city and to acquire the necessary lands by eminent domain, to collect tolls and charges for such facilities and to construct and operate the same within or without the limits of the city. In addition to the foregoing special statutory powers, Ch. 159, Fla.Stats., 1953, F.S.A. which was in effect at the time of the refunding of the revenue certificates granted unto municipalities in the state the power to acquire, construct, own and operate bridges or causeways and structures and equipment in connection therewith either inside or outside the corporate limits, to issue revenue bonds, collect tolls and to exercise the power of eminent domain as may be necessary in the exercise of other powers. It is, therefore, apparent that the City of Treasure Island owns and operates the toll facility of Treasure Island Causeway including the part located within the limits of the City of St. Petersburg pursuant to legislative delegated authority.
The zoning authority of the City of St. Petersburg is established by several general and special legislative grants.[3] In their broadest terms these enactments give that city the power "to provide for and authorize city planning and zoning and to regulate and control the agencies therefor" and "to *759 regulate and restrict the location and use of buildings, structures, and land for trade, industry, residence, or other purposes."
At this juncture it is noted that we do not have the benefit of a specific legislative solution to the problem existing between these municipalities, each interested in the promotion of its own welfare. The problem invites a legislative solution, but finding none we must determine whether or not the City of St. Petersburg may impose its zoning regulations upon the City of Treasure Island as it pertains to and affects that part of Treasure Island Causeway owned and operated by the City of Treasure Island located within the City of St. Petersburg. We answer the question in the affirmative.
In resolving the question we point out the fact that the authority of the City of Treasure Island to construct, operate and maintain the toll facility does not specifically exempt the toll facility or that of the city from the legislative delegated zoning authority granted to the City of St. Petersburg and, conversely, St. Petersburg's zoning authority does not specifically grant the authority to regulate the toll facility of Treasure Island. In such a situation we conclude that the City of St. Petersburg has the lawful authority to impose its zoning powers upon that part of Treasure Island Causeway located within the limits of St. Petersburg. Such a ruling will, we believe, permit each to carry out its properly delegated powers and will carry into effect what we perceive to be the legislative intent of all of the enactments, thus following the rule that a government within another government or even the governmental body itself if operating in a proprietary capacity is governed by the zoning regulations of the area in the absence of specific legislative pronouncement to the contrary. See Annotation, 61 A.L.R.2d 970, which places Florida in the jurisdictions following that rule by virtue of the decisions in State ex rel. Helseth v. Du Bose, 1930, 99 Fla. 812, 128 So. 4 and Nichols Engineering & Research Corp. v. State ex rel. Knight, Fla. 1952, 59 So.2d 874. While we recognize that the rule stated was not actually presented for decision in those cases, nevertheless, we believe that they point to that rule. Further, the rule apparently represents the majority view and it appears to us to be the correct rule because it permits each governmental unit to perform its functions without serious interference from the other. The toll facility of the City of Treasure Island consisting of the Treasure Island Causeway is a proprietary function of that city. See Day v. City of St. Augustine, 1932, 104 Fla. 261, 139 So. 880.
Having determined that the City of St. Petersburg has the power to impose its zoning regulations upon the facility of the City of Treasure Island, it now becomes necessary to determine whether or not the City of St. Petersburg did in fact lawfully impose its zoning regulations upon that facility. The St. Petersburg zoning ordinance zoned the area in which the causeway is located within the limits of that city for single-family residential use. The schedule of district regulations governing that zone permits municipal buildings and uses which are in keeping with the character and requirements of the district. With reference to the special subject of utilities, the ordinance provides that notwithstanding other provisions it is not intended to regulate or restrict the location of utility lines, poles and related facilities other than major plants or substations covering a ground area in excess of 2,000 square feet. The schedule of district regulations applicable to this zoning provides for utilities substations as special exceptions permissible by the Board of Adjustment subject to appropriate conditions and safeguards. We concur with the trial court's findings that the City of St. Petersburg properly and lawfully denied the application for a building permit. The toll booth and toll gates do not constitute "municipal buildings and uses" in keeping with the character and requirements of the single-family residence district and *760 neither do they come within the exception for "the location of utility lines, poles and related facilities." Even if it could be said that the facilities sought to be constructed in the permit constituted "utilities substations", then the same are permitted only by special exception of the Board of Adjustment subject to appropriate conditions and safeguards. This record fails to demonstrate that the denial of that special exception was arbitrary, unreasonable or unlawful. While a toll bridge, causeway or highway may constitute a public utility, they are not a "related facility" to "utility lines and poles."
Lastly, the City of Treasure Island contends that the zoning as applied to the Treasure Island Causeway is arbitrary, unreasonable, confiscatory and unconstitutional. The assertion of this argument presupposes that the zoning regulations materially restrict and impair Treasure Island's use of the lands comprising the causeway. The record fails to sustain this presumption and, to the contrary, the record discloses that the causeway is now used as it has been from its construction as a financially successful toll facility not only paying its own way but contributing substantially to the general treasury of the City of Treasure Island. Admittedly the record discloses that the toll facility would receive increased tolls if the toll gates and toll booth were constructed in the City of St. Petersburg; however, this potential enhancement of the financial success of the toll facility must give way to the reasonable zoning regulations of the City of St. Petersburg. There is competent substantial evidence in the record to support the trial court's finding that the proposed toll gate facility would create traffic congestion, impede fire and police protection, constitute a public nuisance and substantially depreciate property values in the neighborhood.
Affirmed.
SHANNON and KANNER (Ret.), JJ., concur.
NOTES
[1] Charter of the City of Treasure Island, Ch. 18953, Laws of Florida, Acts of 1937, as amended by Ch. 20179, Laws of Florida, Acts of 1939, repealed and re-established by Ch. 31322, Laws of Florida, Acts of 1955.
[2] The records demonstrate that the tolls collected are far in excess of the tolls necessary for orderly retirement of the revenue certificates, so there are no questions here presented or determined involving the impairment of contractual rights of the holders of the revenue certificates.
[3] Ch. 176, Fla.Stats., Ch. 9915, Laws of Florida, Acts of 1923, Ch. 11049, Laws of Florida, Acts of 1925; and the city charter, Ch. 15505, Laws of Florida, Acts of 1931.