322 So.2d 571 (1975)
CITY OF TEMPLE TERRACE, etc., et al., Appellants,
v.
HILLSBOROUGH ASSOCIATION FOR RETARDED CITIZENS, INC., Etc., et al., Appellees.
No. 75-55.
District Court of Appeal of Florida, Second District.
October 10, 1975.
Rehearings Denied November 21, 1975.
*572 Theodore C. Taub and Robert C. Gibbons of Gibbons, Tucker, McEwen, Smith, Cofer & Taub, Tampa, for appellants.
Thomas A. Clark and Thomas J. Roehn of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellees.
GRIMES, Judge.
This is an appeal from a judgment declaring that the defendants' operation of a home for the mentally retarded was not amenable to a city zoning ordinance because their activities partook of the sovereign immunity of the State of Florida.
On May 29, 1974, the Hillsborough Association for Retarded Citizens, Inc. (Association) entered into a contract with the Division of Retardation, Department of Health and Rehabilitative Services of the State of Florida, to provide respite care facilities and services to mentally retarded citizens. On June 13, 1974, the defendant Cook, who was a member of the Board of Directors of the Association, purchased a five bedroom house in a residential area of the City of Temple Terrace which was zoned "single family residential." The following month, the Association took possession of the house with Mr. Cook's permission and began operating its respite care center on the premises.
The purpose of the center is to provide short-term residence and care for mentally retarded citizens, primarily children, whose parents or guardians are either ill, on a business trip or encountering marital difficulties. The average stay at the center is two weeks, and an average of eleven unrelated retarded persons are in residence at a given time. Cottage parents live at the *573 respite center, and the center is staffed by a program director, assistants, cooks and a janitor. All of the employees at the center are employed by the Association. Some of the neighbors asserted that loud noises, screams and moans are emitted both day and night by the retarded persons staying at the center. They also stated that on occasion mentally retarded residents from the facility have wandered through the neighborhood and that the operation of the facility has generated a heavy volume of traffic on what was formerly a quiet residential street.
Any retarded individual who is a client of the Division of Retardation is eligible to receive services at the respite center. The Division pays the Association a specified sum per day for each retarded person housed at the center. Neither Mr. Cook nor the Association applied to the city for a zoning variance. The testimony reflected that there were other areas in the city where the center could have been established without violating zoning ordinances.
The City of Temple Terrace, joined by several persons who live near the center, filed suit to enjoin the operation on grounds that it was a nuisance and was in violation of the zoning ordinances of the city. After the taking of testimony, the court entered a judgment in which it found that even though the use of the premises was contrary to the city's single family residential zoning ordinance, the ordinance could not be enforced against the operation of the facility. The court reasoned that when it was performing respite care services for the retarded, the Association stood in the shoes of the State of Florida and, as such, was not subject to municipal zoning ordinances. The court further found that the plaintiffs failed to support their claim that the defendants' use of the premises constituted a nuisance.
The appellants present essentially three questions: (1) whether a state agency (the Division of Retardation of the Department of Health and Rehabilitative Services) is subject to municipal zoning; (2) whether the Association is entitled to whatever immunity the Division may have; and (3) whether the operation of the respite care center constituted a nuisance. Since the ease by which these questions may be answered is opposite to the order in which the questions are presented, we shall dispose of them in inverse order.
The question of whether the operation of the respite care center constituted a nuisance is peculiarly one best answered by the trial court. There was evidence on both sides of the question. Suffice it to say, there is ample support in the record for a finding that no nuisance exists. Likewise, we believe the evidence fairly supports the conclusion that in the operation of the respite care center the Association was properly performing services which the state is required to do under Fla. Stat. § 402.13 (1973). Most, if not all, of the admittees to the Association's home are registered with the Division of Retardation. The Division maintains supervision and inspection of the services rendered to insure the proper operation of the center. The services provided by the Association supplement those provided by the Division in its regional centers throughout the state. Once it is determined that the operation of the center properly performs a state function, the fact that the premises are owned by Mr. Cook becomes irrelevant. Traditionally, where a state agency is immune from municipal zoning, those parties contracting to do the services which would otherwise be performed by the state have also been held to be immune. Abbott House v. Village of Tarrytown, (1970), 34 A.D.2d 821, 312 N.Y.S.2d 841; Unitarian Universalist Church of Central Nassau v. Shorten, (1970), 63 Misc.2d 978, 314 N.Y.S.2d 66. Therefore, if the Division of Retardation is immune from municipal zoning, the Association is also immune in the operation of its respite care center.
The broad issue remaining in the case concerns the extent, if any, to which the *574 use of land by a governmental unit is subject to applicable zoning regulations. In deciding this type of case, the courts have used varying tests. One approach utilized by a number of courts is to rule in favor of the superior sovereign. Thus, where immunity from a local zoning ordinance is claimed by an agency occupying a superior position in the governmental hierarchy, it is presumed that immunity was intended in the absence of express statutory language to the contrary. E.g., Aviation Services, Inc. v. Board of Adjustment, 1956, 20 N.J. 275, 119 A.2d 761. A second test frequently employed is to determine whether the institutional use proposed for the land is "governmental" or "proprietary" in nature. If the political unit is found to be performing a governmental function, it is immune from the conflicting zoning ordinance. E g., City of Scottsdale v. Municipal Court, 1962, 90 Ariz. 393, 368 P.2d 637. On the other hand, when the use is considered proprietary, the zoning ordinance prevails. E.g., Taber v. City of Benton Harbor, 1937, 280 Mich. 522, 274 N.W. 324. Where the power of eminent domain has been granted to the governmental unit seeking immunity from local zoning, some courts have concluded that this conclusively demonstrates the unit's superiority where its proposed use conflicts with zoning regulations. E.g., Mayor of Savannah v. Collins, 1954, 211 Ga. 191, 84 S.E.2d 454. Other cases are controlled by explicit statutory provisions dealing with the question of whether the operation of a particular governmental unit is subject to local zoning. E.g., Mogilner v. Metropolitan Plan Commission, 1957, 236 Ind. 298, 140 N.E.2d 220.
When the governmental unit which seeks to circumvent a zoning ordinance is an arm of the state, the application of any of the foregoing tests has generally resulted in a judgment permitting the proposed use. This has accounted for statements of hornbook law to the effect that a state agency authorized to carry out a function of the state is not bound by local zoning regulations. 2 Anderson, American Law of Zoning § 9.06 (1968); 8 McQuillin, Municipal Corporations § 25.15 (1965).
Recently, however, several courts have advanced a new test for the resolution of the question of whether one governmental unit is subject to the zoning regulations of another. In Rutgers, State University v. Piluso, 1972, 60 N.J. 142, 286 A.2d 697, the court rejected the criteria often used to resolve the conflicts between governmental units and municipal ordinances as being too simplistic. Even though the dispute involved an attempt on the part of a township to impose its zoning upon an instrumentality of the state, the court adopted what it termed a "balancing of interests" test to decide the case. Thus, the court stated:
"The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation. All possible factors cannot be abstractly catalogued. The most obvious and common ones include the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests... . In some instances one factor will be more influential than another or may be so significant as to completely overshadow all others. No one, such as the granting or withholding of the power of eminent domain, is to be thought of as ritualistically required or controlling. And there will undoubtedly be cases, as there have been in the past, where the broader public interest is so important that immunity *575 must be granted even though the local interests may be great. The point is that there is no precise formula or set of criteria which will determine every case mechanically and automatically."
See also City of Newark v. University of Delaware, Del. Ch. 1973, 304 A.2d 347; Long Branch Division of United Civic and Taxpayers Organization v. Cowan, 1972, 119 N.J. Super. 306, 291 A.2d 381; Town of Oronoco v. City of Rochester, 1972, 293 Minn. 468, 197 N.W.2d 426. A comprehensive note in 84 Harv.L.Rev. 869 (1971) persuasively argues for the use of the balancing of interests principle.
Before attempting to decide which test should be applied to reach a decision in the instant case, it is necessary to consider the Florida law on the subject. The court below and all parties recognize that no appellate court in Florida has squarely passed on this question. The earliest Florida decision involving a conflict between governmental units over the application of a zoning ordinance is State ex rel. Helseth v. DuBose, 1930, 99 Fla. 812, 128 So. 4. There, the City of Vero Beach refused to issue a building permit to Indian River County for the purpose of constructing a jail in violation of the provisions of the city's zoning ordinance. The Supreme Court ruled for the county, finding the application of the ordinance in this particular instance to be unreasonable and arbitrary in light of the location of the property and the proposed use. The court drew no distinction between public and private property owners in the application of zoning ordinances to their land and stated that the vestiture of title in the county was immaterial. Since counties are said to partake of the sovereign immunity of the state,[1] this case could be cited for the proposition that state agencies are subject to municipal zoning in the same manner as private property owners.
On the other hand, the Supreme Court seemed to suggest the application of a governmental-proprietary test in Nichols Engineering & Research Corp. v. State ex rel. Knight, Fla. 1952, 59 So.2d 874. This case held that the construction of an incinerator by the City of Miami, which had been authorized and designated a governmental function by statute, was not objectionable on the ground that the property on which it was to be situated had not been "adequately zoned" for the purpose. The court in A1A Mobile Home Park, Inc. v. Brevard County, Fla.App.4th, 1971, 246 So.2d 126, also appeared to adopt a governmental-proprietary test in passing upon whether the land use activity of a county was subject to its own zoning restrictions.
In City of Treasure Island v. Decker, Fla.App.2d, 1965, 174 So.2d 756, this court held that the City of St. Petersburg could impose its zoning regulations upon the City of Treasure Island with respect to a toll collection facility located on a portion of causeway within the city limits of St. Petersburg. The opinion emphasized that the legislative grant of authority to Treasure Island to construct and operate the toll facility did not specifically exempt it from the legislatively delegated zoning authority of St. Petersburg. This case, of course, dealt with two governmental units of equal stature in the governmental hierarchy.
A more recent case on intergovernmental conflict over zoning is Orange County v. City of Apopka, Fla.App.4th, 1974, 299 So.2d 652. Here, three municipalities sought to construct an airport in an unincorporated area of Orange County. Under the zoning regulations, airports were only allowed in the subject area by special exception. The zoning authority declined to grant an exception. The municipalities brought suit for a declaration that they were not subject to the zoning regulations of Orange County. After noting that the established law of Florida seemed to be that a governmental unit is not bound by its own zoning regulations when acting in a governmental capacity, the court declined *576 to extend the application of the governmental-proprietary function test for resolving zoning conflicts to those cases in which one governmental unit proposed to use property in the jurisdiction of another governmental unit contrary to existing zoning regulations. The court said:
"Rather than become limited by the governmental-proprietary distinction which could lead to situations which cry for relief, we feel the better rule, the rule allowing for the greatest flexibility and fairness, is one which requires that one governmental unit be bound by the zoning regulations of another governmental unit in the use of its extraterritorial property, purchased or condemned, in the absence of specific legislative authority to the contrary. In the absence of express legislative immunity from zoning, the intruding governmental unit should apply to the host governmental unit's zoning authority for a special exception or for a change in zoning, whichever is appropriate. The zoning authority is then in a position to consider and weigh the applicant's need for the use in question and its effect upon the host unit's zoning plan, neighboring property, environmental impact, and the myriad other relevant factors. If the applicant is dissatisfied with the decision of the zoning authority, it is entitled, pursuant to Section 163.250, F.S. 1971, F.S.A.,[2] to a judicial determination de novo wherein the circuit court can balance the competing public and private interests essential to an equitable resolution of the conflict. The court can consider, inter alia, the type of function involved, the applicant's legislative grant of authority, the public need therefor, the existing land use scheme, alternative locations for the facility in less restrictive zoning areas, alternative methods for providing the needed improvement, and the detriment to the adjoining landowners. If after weighing all pertinent factors the court finds the host government is acting unreasonably, the zoning ordinance should be held inapplicable to the proposed improvement, just as was done in State ex rel. Helseth v. DuBose, 99 Fla. 812, 128 So. 4 (1930)."
The District Court of Appeal construed State ex rel. Helseth v. DuBose, supra, as having utilized a "balancing-of-public-interest test" and decided to adopt that criterion. That same court more recently reaffirmed its position in Palm Beach County v. Town of Palm Beach, Fla.App.4th, 1975, 310 So.2d 384, by directing the application of a "balancing-of-competing interest test" to determine whether Palm Beach County would be entitled to use certain property in the Town of Palm Beach as an oceanfront beach and recreational facility in violation of the zoning regulations of Palm Beach.
With no sure precedent to go by, we will now examine the merits of the several tests which have been used to decide this type of case.

Superior Sovereign Test
The argument in favor of this view is that since a municipality is a creature of the state legislature, it should not be permitted to use its zoning to thwart a state function. The premise upon which this contention is made seems to have been weakened by the adoption of Florida's new Constitution. Article VIII, Section 2(b) of the Florida Constitution provides:
"(b) POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law... ."
Thus, even though municipalities may be created by statute, their powers are derived from the Constitution.
*577 However, in City of Miami Beach v. Fleetwood Hotel, Inc., Fla. 1972, 261 So.2d 801, the Supreme Court cast doubt on the broad scope of municipal home rule which many had thought was provided in the 1968 Constitution. Specifically, the court held that the City of Miami Beach could not adopt a rent control ordinance absent a legislative enactment authorizing the exercise of such power.
Thereafter, in 1973, the legislature passed the Municipal Home Rule Powers Act. Included in this act was Fla. Stat. § 166.021(4) (1973) which stated:
"The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited...."
In the passage of Fla. Stat. § 166.042 (1973), the legislature repealed the legislative grant of zoning power (what had been Chapter 176) in recognition that the zoning power of municipalities now comes directly from the Constitution. The Municipal Home Rule Powers Act placed two pertinent exceptions upon the constitutionally-based legislative powers of municipalities. First, Fla. Stat. § 166.021(3)(b) (1973) provides that municipalities may not enact legislation concerning any subject expressly prohibited by the Constitution. Second, Fla. Stat. § 166.021(3)(c) (1973) states that municipalities may not enact legislation concerning any subject expressly preempted to state or county government by the Constitution or by general law. The Constitution does not expressly prohibit zoning legislation by municipalities. Neither does the Constitution nor general law expressly preempt zoning power to state or county government.
The Supreme Court considered the validity of a new rent control ordinance promulgated by the City of Miami Beach following the passage of the Home Rule Powers Act in City of Miami Beach v. Forte Towers, Inc., Fla. 1974, 305 So.2d 764. The court held that the enactment of a rent control ordinance was not "expressly prohibited by law" and came within the grant of power contained in Fla. Stat. § 166.021(1).
All of this leads us to believe that the instant case should not be decided solely upon the theory that since the state stands higher than a municipality upon the ladder of governmental hierarchy, the decisions of its administrators should necessarily preempt the zoning authority of those charged with governing a municipality. With this in mind, we shall consider the validity of the other recognized tests for deciding this type of case.

Governmental-Proprietary Test
The wisdom of the governmental-proprietary test is subject to question. E.g., Township of Washington v. Village of Ridgewood, 1958, 26 N.J. 578, 141 A.2d 308; 2 Anderson, American Law of Zoning § 9.05 (1968). Its applicability in Florida now seems limited to situations where a governmental unit seeks to violate its own zoning ordinance. See Orange County v. City of Apopka, supra. Presumably, if a governmental agency is authorized to perform a function, it should not make any difference whether this function is governmental or proprietary in nature for the purpose of complying with local zoning. Some of the fallacies of applying such a test may be seen by comparing the case of County of Westchester v. Village of Mamaroneck, 1964, 22 A.D.2d 143, 255 N.Y.S.2d 290, with that of Jefferson County v. City of Birmingham, 1951, 256 Ala. 436, 55 So.2d 196. The decision first cited above *578 held that the operation of a sewage disposal plant was governmental in nature, whereas the second held it was proprietary. In the case sub judice, the services provided by the Association for the Division of Retardation appear to be governmental in nature, but we are not inclined to decide the case based upon this characterization.

Power of Eminent Domain Test
Cases which have applied this test generally take the position that where a political unit is authorized to condemn, it is automatically immune from local zoning regulations when it acts in furtherance of its designated public function. Yet, the power to condemn simply provides a method whereby property can be acquired. Such power has nothing to do with the use of the property. The leading case favoring the adoption of this test is State ex rel. Askew v. Kopp, Mo. 1960, 330 S.W.2d 882. However, the Supreme Court of Missouri two years after its decision in Askew modified the doctrine of absolute immunity which had been established in that case. Thus, in St. Louis County v. City of Manchester, Mo. 1962, 360 S.W.2d 638, the court held that a city's power of eminent domain did not necessarily conflict with a county's authority to regulate land uses through its zoning ordinances. The court held that while the city had the right to acquire the property by eminent domain, it had not been specifically authorized by statute to select the exact location of a sewage plant in disregard of the county's zoning ordinance. In the instant case, the Association is not asserting that it has the right to disregard the city's zoning on the basis of any kind of right of eminent domain which might be available to the Division of Retardation. Even if it were, we would not consider this power as controlling our decision in the case.

Statutory Guidance Test
If the legislature had specifically provided that the Division of Retardation could place respite centers in any location it wished without regard to local zoning, such a legislative declaration would control. Likewise, if there was a law which required the Division of Retardation to respect municipal zoning in its selection of sites for respite centers, this too, would be decisive. As it turns out, there is no legislative guidance either way. Obviously, the Association argues that since the legislature has not restricted the Division's authority, it must be presumed that the legislature intended for the Division to have the right to disregard municipal zoning. On the other hand, the city contends that since the legislature didn't specifically authorize the Division to ignore municipal zoning, it must be presumed that the legislature intended the Division to respect municipal zoning ordinances. It is more likely that the legislature didn't express itself on the subject because it wasn't thinking about the problem. We hesitate to suggest that there is a presumption running in either direction. While we acknowledge that a specific legislative statement on the subject would control, in the absence of such a statement we must look to other criteria in order to reach a decision.

Balancing of Interests Test
Thus, we arrive at the balancing of interests test, which is sometimes referred to as the balancing of competing interests test or the balancing of public interests test. For the reasons previously given in discussing this test, we believe that it presents the fairest method by which this type of case can be decided. It permits a case by case determination which takes into consideration all of the factors which may properly influence the result.
The old tests were adopted at a time when state government was much smaller. The myriad of agencies now conducting the functions of the state have necessarily resulted in a diminution of centralized control. The decision of a person administering an outlying function of a state agency with respect to the site where this function *579 should be performed is not necessarily any better than the decision of the local authorities on the subject of land use. The adoption of the balancing of interests test will compel governmental agencies to make more responsible land-use decisions by forcing them to consider the feasibility of other sites for the facility as well as alternative methods of making the use of the proposed site less detrimental to the local zoning scheme.
Our burgeoning population and the rapidly diminishing available land make it all the more important that the use of land be intelligently controlled. This can only be done by a cooperative effort between interested parties who approach their differences with an open mind and with respect for the objectives of the other. When the state legislature is silent on the subject, the governmental unit seeking to use land contrary to applicable zoning regulations should have the burden of proving that the public interests favoring the proposed use outweigh those mitigating against a use not sanctioned by the zoning regulations of the host government.
There may be cases in which a state agency may be so convinced of the overriding public need for a particular land use that it may choose to go forward without resort to local authorities. Yet, under normal circumstances one would expect the agency to first approach the appropriate governing body with a view toward seeking a change in the applicable zoning or otherwise obtaining the proper approvals necessary to permit the proposed use.
As was the District Court of Appeal in Orange County v. City of Apopka, supra, we are reluctant to reverse the decision of the court below. Like the judgment entered in that case, the judgment below was well considered and there is ample authority for the conclusions which were reached. Nevertheless, we adopt the rationale of our sister court in determining to use the balancing of interests test to decide the consequences resulting from the exercise of a governmental function by one governmental unit within the geographic limits of a different governmental unit, and we do so without regard to the fact that one of those governmental units is the state.
The court below rendered its decision on the basis of the superior sovereign test. Therefore, the judgment is reversed, and the case is remanded with directions to conduct further proceedings directed toward the decision of the case through the application of the balancing of interests test.
Reversed and remanded.
HOBSON, A.C.J., and SCHEB, J., concur.

ON PETITION FOR REHEARING
GRIMES, Judge.
In addition to the usual petitions for rehearing, there have now been filed in this cause motions by the Department of Health and Rehabilitative Services and the Attorney General for permission to file amicus curiae briefs. The Department of Health and Rehabilitative Services points out that it was not a party in the case and says it was first informed of our opinion on the date the motion was filed. The Attorney General says that our opinion conflicts with the previous uniform practice of all state agencies.
The very filing of these motions serves to illustrate the need to employ a balancing of interests test to decide these cases. The sovereign immunity approach presupposes that the sovereign, in its wisdom, has already carefully weighed the needs of the public agains the hardships likely to be inflicted on nearby property owners in deciding to locate a governmental facility in an area where the proposed activity is prohibited by local zoning laws. To the contrary, it appears that many times, as in this case, the decision of whether to conduct a governmental activity at a location *580 precluded by zoning laws is not being consciously made by persons charged with the responsibility of considering the effect of this activity upon the persons who live nearby.
The motions for permission to file amicus curiae briefs come too late and are hereby denied. The petitions for rehearing are also denied.
Recognizing that our opinion would and believing that it should require state agencies affirmatively to take into consideration the effect that their activities may have on local zoning laws and the people sought to be protected by these laws, we hereby certify this case to the Supreme Court as involving a question of great public interest in order that the rules which should be followed may be definitively established on a statewide basis.
HOBSON, A.C.J., and SCHEB, J., concur.
NOTES
[1] Kaulakis v. Boyd, Fla. 1962, 138 So.2d 505.
[2] On rehearing, the court receded from its reference to § 163.250 but otherwise adhered to its opinion.