Mr. T. Terrell Sessums General Counsel Tampa Port Authority Post Office Box 2192 811 Wynkoop Road Tampa, Florida 33601
Dear Mr. Sessums:
This is in response to your request for an opinion on substantially the following question:
 CAN THE CITY OF TAMPA REQUIRE THE TAMPA PORT AUTHORITY TO OBTAIN A BUILDING PERMIT FOR THE CONSTRUCTION OF A BUILDING UPON AUTHORITY PROPERTY WITHIN THE CITY LIMITS OF TAMPA?
Your inquiry states that recently the City of Tampa began requiring the Tampa Port Authority to obtain building permits for the construction of small utility buildings designed in-house by your engineering staff and constructed by your own maintenance employees on Authority property. During a telephone conversation with your office, your assistant stated that the proposed building will be approximately 600 square feet and in the nature of a storage room; the use or storage of electrical equipment is not
contemplated as a purpose or use of the building. Your inquiry also states that these permits and the professional services required to obtain them are an item of considerable expense to the port authority, which operates with public funds. Thus, you inquire whether the city can require the port authority to obtain such permits for construction within the city limits. For the following reasons, your question is answered in the affirmative.
Chapter 553, Part VI, the `Florida Building Codes Act' expressly provides in s 553.73 that local governments with building construction regulation responsibilities shall adopt a building code which shall cover all types of construction. Sections 553.79
and 553.80 similarly provide for comprehensive application and enforcement of Ch. 553, Part VI and local building codes adopted under it to `any building within the state.' See also s 553.73(5) and (6) (the latter providing that the specific model code of the State Minimum Building Codes adopted by a municipality shall regulate every type of building or structure, wherever it might besituated in the code enforcement jurisdiction).
Thus, Ch. 553, Part VI contemplates that local enforcement agencies, such as municipalities, shall adopt and enforce a building code to cover all types of construction, and that the specific model code adopted shall regulate every type of building located within the jurisdiction of the local enforcement agency. Nowhere in Part VI of Ch. 553 is exception made for construction by special districts such as the Tampa Port District or its governing body, The Tampa Port Authority.
I note also the case of Hills borough Association for Retarded Citizens, Inc. v. City of Temple Terrace, 332 So.2d 610 (Fla. 1976), affirming the decision of the Second District Court of Appeal in City of Temple Terrace v. Hills borough Association for Retarded Citizens, Inc., 322 So.2d 571 (2 D.C.A. Fla., 1975). The issue in that case was the extent to which agencies of the state are subject to municipal zoning ordinances. Both opinions stressed that the zoning powers of municipalities are derived from ArticleVIII, s 2(b) of the Florida Constitution, by way of the Municipal Home Rule Powers Act, s 166.021(4), F.S., and thus recognized that the police powers of municipalities are constitutionally delegated ones. The Supreme Court opinion went on to hold that only where a specific legislative directive requires a nonconforming use would there be immunity from local zoning regulations, and only then would the balancing of interests test not be applicable to the proposed land use. The Supreme Court opinion in Temple Terrace
also distinguished the situation in Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla. 1975), from that in Temple Terrace, noting that the doctrine of sovereign immunity, although controlling in the taxation area, did not apply because the power of municipalities to zone was derived from the Constitution.
I also direct your attention to the case of City of Treasure Island v. Decker, 174 So.2d 756 (2 D.C.A. Fla., 1965) (holding that the City of St. Petersburg could impose its zoning regulations upon the City of Treasure Island with respect to a toll facility located partly within the city limits of St. Petersburg. The court emphasized that the statute authorizing the toll facility did not specifically exempt it from the city's zoning authority). Cf. Orange County v. City of Apopka, 259 So.2d 652 (4 D.C.A. Fla., 1974) (adhering to the rule that one governmental unit, in the use of its extraterritorial property, is bound by the zoning regulations of another unit, in the absence of specific legislative authority to the contrary); and Palm Beach County v. Town of Palm Beach, 310 So.2d 384 (4 D.C.A. Fla., 1975) (adhering to the rule set forth in City of Apopka, and holding that the county was bound by zoning regulations of the municipality in the use of county property located within the municipality). Accord, AGO 076-114 (concluding that the recently developed general rule in Florida is that unless the Legislature determines otherwise, one governmental unit in the use of its property located within the jurisdictional boundaries of another governmental unit, is bound by the zoning regulations of the latter). That opinion also noted that the same reasoning applicable to inter-governmental zoning questions should be equally applicable to building code questions that arise on an inter-governmental basis, and that in the absence of express legislative provision otherwise, certain property not specifically exempted by s 253.033(2), F.S., should be subject to the building regulations of the City of North Miami. See also AGO 073-369 (concluding that since the ability to enact both building codes and zoning regulations falls under the police power, the rationale of City of Treasure Island v. Decker, supra, should also govern applicability of county building regulations on municipal property located outside the city limits, in the absence of any specific statute providing an exemption). Compare AGO 079-37 (discussing s 235.26, F.S., as an example of a statute which exempts construction from local building codes). Section 315.03, F.S., is merely a grant of powers to acquire, construct and operate port facilities, and s 315.04 provides generally that except as required by ss 315.03(1) and 315.04, the consent of other governmental entities, except for the Board of Trustees of the Internal Improvement Trust Fund, shall not be required for the exercise of port facility powers granted by Ch. 315, the `1959 Port Facilities Financing Law.' In my opinion, however, s 315.04, F.S., read in pari materia with s 315.03(1) and Ch. 553, Part VI, simply does not furnish the specific exemption or immunity from local building codes which is necessary under the above authorities. Moreover, Ch. 553, Part VI, specifically governs the subject of building code regulation by local governments and is the latest expression of legislative will on this subject. Additionally, my research has not revealed, nor have you brought to my attention, any provision of Ch. 23338, 1945, Laws of Florida, the original enabling legislation of the Tampa Port District and its governing board, The Tampa Port Authority, or any provision in subsequent amendatory legislation, that exempts the Port District or the Authority from local building regulations. Accordingly, I must conclude that the Port District and the Authority should be subject to building codes adopted by the City of Tampa under Ch. 553, Part VI.
In summary, unless or until legislatively determined otherwise, it is my opinion that the Tampa Port Authority is subject to the City of Tampa's building regulations, and that the city may require the port authority to obtain a building permit for the construction of a building upon Authority property within the city limits of Tampa and to submit to inspection by city building inspectors.
Sincerely,
Jim Smith, Attorney General
Prepared by: Anne Curtis Terry, Assistant Attorney General