Mr. James P. Wilson St. Augustine City Attorney 75 King Street St. Augustine, Florida 32084 Mr. Sidney E. Ansbacher General Counsel Florida School for the Deaf and the Blind 780 North Ponce de Leon Boulevard St. Augustine, Florida 32084
Dear Mr. Wilson and Mr. Ansbacher:
The City of St. Augustine and the Florida School for the Deaf and the Blind have jointly requested my opinion on substantially the following questions:
1. Is the Board of Trustees for the Florida School for the Deaf and the Blind a "board" for purposes of section 1013.33(2)-(9), Florida Statutes, requiring the coordination of planning between boards and local governing bodies?
2. Does section 1013.33(15)(b), Florida Statutes, preclude the City of St. Augustine from regulating demolition or relocation and replacement of buildings on the Florida School for the Deaf and the Blind facility site?
3. What impact does City of Temple Terrace v. Hillsborough Associationfor Retarded Citizens[1] have on the authority of the City of St. Augustine to regulate those land use activities of the Florida School for the Deaf and the Blind that are not exempt from local government review or approval pursuant to section 1013.33(15)(b), Florida Statutes?
4. Does the Board of Directors of the Florida School for the Deaf and the Blind have the authority to condemn real property for the use of the school?
In sum:
1. The Board of Trustees for the Florida School for the Deaf and the Blind is a "board" as that term is used in section 1013.33(2)-(9), Florida Statutes, and must comply with the interlocal agreement requirement of that statute to the same extent and in the same manner as any other board.
2. Demolition and relocation of buildings does not appear to fall within the scope of either "renovation" or "construction" as contemplated by section 1013.33(15)(b), Florida Statutes. However, to the extent that replacement of buildings falls within the scope of the term "construction," that activity would not require local government review or approval pursuant to section 1013.33(15)(b), Florida Statutes.
3. Section 1013.33, Florida Statutes, specifically requires that the Florida School for the Deaf and the Blind coordinate planning with local governing bodies. Thus, this statutory scheme for such coordination and cooperation controls over the more general judicial approach set forth inCity of Temple Terrace v. Hillsborough Association for RetardedCitizens.
4. The Board of Trustees for the Florida School for the Deaf and the Blind may not condemn property or exercise the power of eminent domain.
Initially, I would note that a number of your questions require resolution of specific fact situations representing mixed questions of law and fact, which are outside the scope of authority of this office. Questions requiring an interpretation of federal law are also outside this office's statutory mandate and must be addressed by the federal agencies charged with interpreting these laws. Your questions requiring interpretation of Florida statutory law have been answered herein.
The Florida School for the Deaf and the Blind was established in 1885 and is located within the City of St. Augustine. The school is a state-supported residential school for hearing-impaired and visually impaired students in preschool through twelfth grade. The mission of the school is "to utilize all available talent, energy, and resources to provide free appropriate public education for eligible sensory-impaired students of Florida."[2] Pursuant to section 1002.36(1), Florida Statutes, "[t]he school is a part of the state system of public education and shall be funded through the Department of Education." Administrative control of the school is vested in a seven-member board of trustees with four-year terms of office.[3] The board of trustees is appointed by the Governor and confirmed by the Senate.[4]
The Board of Trustees for the Florida School for the Deaf and the Blind is required by section 1002.36(4)(f)3., Florida Statutes, to adopt a master plan setting forth the mission and objectives of the school. Pursuant to the statute:
"The plan shall include, but not be limited to, procedures for systematically measuring the school's progress toward meeting its objectives, analyzing changes in the student population, and modifying school programs and services to respond to such changes. The plan shall be for a period of 5 years and shall be reviewed for needed modifications every 2 years. The board of trustees shall submit the initial plan and subsequent modifications to the Speaker of the House of Representatives and the President of the Senate."
The school is currently involved in construction and expansion of its facilities in accordance with the school's five-year plan. Your questions relate to whether the school must operate in compliance with the city's land development regulations in undertaking construction and expansion to accomplish these goals.
Question One
You have asked whether the Florida School for the Deaf and the Blind is subject to the requirements of section 1013.33, Florida Statutes, requiring boards and local governmental entities to coordinate planning and development of public education facilities.
Section 1013.33(1), Florida Statutes, provides:
"It is the policy of this state to require the coordination of planning between boards and local governing bodies to ensure that plans for the construction and opening of public educational facilities are facilitated and coordinated in time and place with plans for residential development, concurrently with other necessary services. Such planning shall include the integration of the educational facilities plan and applicable policies and procedures of a board with the local comprehensive plan and land development regulations of local governments."
The section uses the terms "board," "school board," and "district school board" interchangeably throughout.[5]
Section 1013.33(2)-(9), Florida Statutes, requires school boards, counties, and certain municipalities[6] to enter into an interlocal agreement "that jointly establishes the specific ways in which the plans and processes of the district school board and the local governments are to be coordinated."[7] Interlocal agreements between local governments and school boards that were previously adopted under the provisions of section 163.3177, Florida Statutes, must be updated and executed pursuant to the requirements of subsections (2) through (9), if necessary.[8]
While the term "board" or "school board" is not specifically defined for purposes of section 1013.33, Florida Statutes, the definitional section of Chapter 1013, section 1013.01, Florida Statutes, does provide such a definition. Section 1013.01(3), Florida Statutes, states:
"Board," unless otherwise specified, means a district school board, a community college board of trustees, a university board of trustees, andthe Board of Trustees for the Florida School for the Deaf and the Blind. The term "board" does not include the State Board of Education. (e.s.)
Thus, the Board of Trustees for the Florida School for the Deaf and the Blind is clearly within the scope of the term "board" as it is used in section 1013.33(2)-(9), Florida Statutes, and must comply with the requirements for coordination of planning with local governmental agencies.
Question Two
You have asked whether section 1013.33(15)(b), Florida Statutes, precludes the City of St. Augustine from regulating demolition or relocation and replacement of structures on the Florida School for the Deaf and the Blind facility site.
Section 1013.33(15), Florida Statutes, requires that existing schools shall be considered to be consistent with the applicable local government comprehensive plan adopted under Part II, Chapter 163, Florida Statutes. The statute provides that local government review or approval is not required for
"[p]roposed renovation or construction on existing school sites, with the exception of construction that changes the primary use of a facility, includes stadiums, or results in greater than 5 percent increase in student capacity, or as mutually agreed upon, pursuant to an interlocal agreement adopted in accordance with subsections (2)-(8)."[9]
Section 1013.33(15)(b), Florida Statutes, specifically addresses "renovation or construction on existing school sites." The term "[r]enovation" is defined for purposes of Chapter 1013, Florida Statutes, to mean, in part:
"[T]he rejuvenating or upgrading of existing facilities by installation or replacement of materials and equipment and includes, but is not limited to, interior or exterior reconditioning of facilities and spaces; air-conditioning, heating, or ventilating equipment; fire alarm systems; emergency lighting; electrical systems; and complete roofing or roof replacement, including replacement of membrane or structure."[10]
While the term "construction" is not defined, the ordinary meaning[11]
of the word "construct" is: "to make or form by combining parts:build";[12] and "[t]o build; erect; make."[13] (e.s.)
Demolition and relocation of buildings does not appear to fall within the scope of either "renovation" or "construction" as contemplated by section1013.33(15)(b), Florida Statutes. You have also asked about "replacement." To the extent "replacement" falls within the scope of "construction," that activity may not require local government review or approval pursuant to section 1013.33(15)(b), Florida Statutes.
Question Three
You ask what impact the case of City of Temple Terrace v. HillsboroughAssociation for Retarded Citizens,[14] may have on the authority of the City of St. Augustine to regulate those land use activities of the Florida School for the Deaf and the Blind that are not exempt from local government review or approval pursuant to section 1013.33(15)(b), Florida Statutes.
In the Hillsborough Association for Retarded Citizens case the Florida Supreme Court determined that a balancing of interests test must be applied in order to decide the consequences resulting from the exercise of a governmental function by one governmental unit within the geographic limits of a different governmental unit.[15] The case involved a suit brought by the City of Temple Terrace and several city residents to enjoin operation of a home for the mentally retarded on the grounds that the home was a nuisance and in violation of city zoning ordinances. The Second District Court of Appeal held that a determination of whether a governmental agency is immune from a zoning ordinance should be made by applying a balancing of interests test, under which the governmental unit seeking to use land contrary to applicable zoning regulations has the burden of proving that the public interests favoring the proposed use outweigh those mitigating against uses not sanctioned by zoning regulations of the host government. The Florida Supreme Court adopted this view.[16]
However, I would note that the District Court of Appeal in HillsboroughCounty Association for Retarded Citizens recognized that "[i]f there was a law which required the Division of Retardation to respect municipal zoning in its selection of sites for respite centers, this . . . would be decisive."[17] In this case no such statute existed and the court was forced to weigh the merits of a number of different tests to determine which would provide the most fair outcome when governmental entities are unable to resolve disagreements over land-use matters.
As discussed above, section 1013.33, Florida Statutes, specifically requires that the Florida School for the Deaf and the Blind coordinate planning with local governing bodies. Thus, this statutory scheme for such coordination and cooperation controls over the judicial test inHillsborough County Association for Retarded Citizens.
Question Four
You ask whether the Board of Trustees for the Florida School for the Deaf and the Blind may condemn real property for the use of the school.
The Board of Trustees for the Florida School for the Deaf and the Blind is created in section 1002.36(4), Florida Statutes. As discussed above, the board consists of seven members appointed by the Governor.[18] The board operates as a body corporate.[19]
Among the powers of the board is the authority to adopt administrative rules[20] and the authority to accept gifts, donations, or bequests.[21]
In addition, the board may sell or convey any property received as a gift, donation or bequest upon terms it deems to be in the best interest of the school and its students.[22] The board of trustees exercises complete jurisdiction over the management of the school and may appoint a president, faculty, teachers, and other employees and may also remove them.[23]
The board has authority to procure professional services, such as medical, mental health, architectural, engineering, and legal services.[24]
It is the responsibility of the board "to provide for the students of the school necessary bedding, clothing, food, and medical attendance and such other things as may be proper for the health and comfort of the students without cost to their parents[.]"[25] The board must provide for the proper keeping of accounts and records and for the budgeting of funds.[26] Contractual authority is vested in the board; it may sue and be sued and secure public liability insurance.[27] The board of trustees is responsible for preparing and submitting legislative budget requests, including fixed capital outlay requests,[28] and is empowered to invest in securities and administer and maintain personnel programs for its employees.
Florida courts have established that an administrative agency or officer possesses no inherent power and may exercise only such authority as expressly or by necessary implication is conferred by law.[29] In addition, if any reasonable doubt exists as to the lawful existence of a particular power, it should not be exercised.[30] Nothing in section1002.36, Florida Statutes, specifically authorizes the Board of Trustees for the Florida School for the Deaf and the Blind to exercise the power of condemnation, nor is that power one that may be necessarily or reasonably implied from the powers specifically granted in the act.[31]
Further, condemnation proceedings are statutory proceedings allowed and required to be taken in the exercise of the power of eminent domain. Condemnation is not a common-law action and the method by which the power of eminent domain is to be exercised is dependent upon the constitutional or statutory provisions involved.[32]
Therefore, in the absence of any specific statutory authorization, the Board of Trustees for the Florida School for the Deaf and the Blind may not condemn property or exercise the power of eminent domain, nor does the board possess any implied authority to exercise such powers.
I would note that section 1013.24, Florida Statutes, provides:
"There is conferred upon the district school boards in the state the authority and right to take private property for any public school purpose or use when, in the opinion of the school board, such property is needed in the operation of any or all of the public schools within the district, including property needed for any school purpose or use in any school district or districts within the county. The absolute fee simple title to all property so taken and acquired shall vest in the district school board, unless the school board seeks to appropriate a particular right or estate in such property."
Thus, district school boards do have the right of eminent domain. Unlike section 1013.33, Florida Statutes, in which the terms "board," "school board," and "district school board" are used interchangeably, section1013.24, Florida Statutes, appears to apply specifically to district school boards. In the absence of any reference to the "board" as that term is defined in section 1013.01(3), Florida Statutes, I cannot say that the right of eminent domain is extended by section 1013.24, Florida Statutes, to the Board of Trustees for the Florida School for the Deaf and the Blind.
Sincerely,
Richard E. Doran Attorney General
[1] 322 So.2d 571 (Fla.2d DCA 1975), affirmed, 332 So.2d 610 (Fla. 1976).
[2] Section 1002.36(2), Fla. Stat.
[3] See, s. 1002.36(4), Fla. Stat.
[4] Section 1002.36(4)(a), Fla. Stat.
[5] See, e.g., s. 1013.33(1), Fla. Stat., requiring planning between "boards" and local governing bodies, and s. 1013.33(2)(a), Fla. Stat., referring to "[t]he school board" and requiring the school board, the county, and nonexempt municipalities to enter into an interlocal agreement; and 1013.33(3)(e), Fla. Stat., referring to both the "school board" and the "district school board"; and 1013.33(9), Fla. Stat., requiring that the "board" and the local governing body must share and coordinate certain information.
[6] Section 1013.33(2)(a), Fla. Stat., requires nonexempt municipalities located within the geographic area of a school district to enter into an interlocal agreement.
[7] Section 1013.33(2)(a), Fla. Stat.
[8] Section 1013(2)(d), Fla. Stat.
[9] Section 1013.33(15)(b), Fla. Stat.
[10] Section 1013.01(18), Fla. Stat.
[11] It is a general rule of statutory construction that, in the absence of a statutory definition, the plain and ordinary meaning of words can be ascertained if necessary by reference to a dictionary. See,Green v. State, 604 So.2d 471 (Fla. 1992); Plante v. Department ofBusiness and Professional Regulation, 685 So.2d 886, 888 (Fla. 4th DCA 1996).
[12] Webster's New Collegiate Dictionary 243 (1975).
[13] The American Heritage Dictionary 151 (office ed. 1983).
[14] 322 So.2d 571 (Fla.2d DCA 1975), affirmed, 332 So.2d 610 (Fla. 1976).
[15] 322 So.2d 579 (Fla.2d DCA 1975).
[16] And see, Op. Att'y Gen. Fla. 93-15 (1993), in which this office concluded that, applying the Hillsborough Association for RetardedCitizens test, property of the St. Johns County Airport Authority was subject to zoning regulations adopted by St. Johns County.
[17] Id. at 578.
[18] Section 1002.36(4)(a), Fla. Stat.
[19] Section 1002.36(4)(d), Fla. Stat.
[20] Section 1002.36(4)(c), Fla. Stat.
[21] Section 1002.36(4)(e)1., Fla. Stat.
[22] Section 1002.36(4)(e)4., Fla. Stat.
[23] Section 1002.36(4)(d), Fla. Stat.
[24] Id.
[25] Supra n. 23
[26] Supra n. 23
[27] Supra n. 23.
[28] Section 1002.36(4)(f), Fla. Stat.
[29] See, e.g., State ex rel. Greenberg v. Florida State Boardof Dentistry, 297 So.2d 628 (Fla. 1st DCA 1974), cert. dismissed,300 So.2d 900 (Fla. 1974).
[30] See, White v. Crandon, 156 So. 303, 305 (Fla. 1934).
[31] Compare, e.g., s. 127.01(a), Fla. Stat., delegating the power of eminent domain to counties; s. 166.411, Fla. Stat., authorizing municipalities to exercise the power of eminent domain for certain, specified purposes; and s. 298.22(6) and (7), Fla. Stat., empowering boards of supervisors of water control districts to condemn land or property within or without the district.
[32] See, generally, 29A C.J.S. Eminent Domain s. 209, pp. 931-932 (1965), Marvin v. Housing Authority of Jacksonville, 183 So. 145 (Fla. 1938); Op. Att'y Gen. Fla. 87-53 (1987), concluding that without specific, express statutory authority for the exercise of the condemnation power, a land authority possesses no power to condemn property.