TUCKER, Judge.
This is a suit by the Louisiana National Bank of Baton Rouge as the holder and owner of a certain promissory note made and executed by defendant Bobby Wicker doing business as Wicker’s American Service Center, located at 9945 Airline Highway, in Baton Rouge, Louisiana. The note sued on was dated July 18, 1968, in the principal amount of Three Thousand and no/100 ($3,000.00) Dollars, payable to the order of bearer at the Louisiana National Bank of Baton Rouge in one (1) installment of Three Thousand and no/100 ($3,000.00) Dollars, due on October 16, 1968; said note stipulating to bear interest at the rate of eight (8%) percent per an-num from maturity, plus twenty-five (25%) percent additional on both principal and interest as attorney fees. Despite amicable demand defendant defaulted on the note, and plaintiff sued for the balance due on the note of Two Thousand, Four Hundred Eighty-Three and 05/100 ($2,483.05) Dollars, plus interest and attorney fees as provided in the said note.
Plaintiff also asks that a chattel mortgage given to secure the payment of the aforesaid note, together with vendor’s lien and privilege, be recognized, reserved and enforced. The chattel mortgage does not reflect a vendor’s lien and privilege but does purport to mortgage the following described property upon which Wicker placed a value of $6,023.25:
loo Tires
65 Cases Oil
35 Batteries
21 Battery Cables
55 Pairs Wiper Blades
20 Sets Spark Plugs
75 Air Filters
30 Oil Filters
4 Cases Seal Beams
40 Tubes
55 Fan. Belts
30 Radiator Hoses
100 Lbs. Grease
Defendant Wicker answered plaintiff’s petition stating that he had filed a petition in bankruptcy in which he had listed the Louisiana National Bank as an unsecured creditor on his schedule of liabilities, and that in due course the amount sued for in the present suit would become uncollectible.
Plaintiff immediately filed an amended petition in which it stated that it had just discovered that Mr. Wicker was not the owner of the property listed in the chattel mortgage, and that, in representing himself as the owner thereof, he “had fraudulently and designedly concealed this fact from plaintiff and without this said alleged fraudulent representation plaintiff would not have extended credit to the defendant.”
Six months later plaintiff Louisiana National Bank filed another amended petition, making the American Oil Company a party defendant, charging it with seizure of the property listed in the chattel mortgage prior to the filing of the instant suit, and asking that the American Oil Company be held liable to plaintiff for the amount of its claim against defendant Wicker.
The American Oil Company answered this second petition stating that it had sold the articles covered by the chattel mortgage prior to the time that Mr. Wicker had executed the chattel mortgage to plaintiff; that American Oil Company had not been paid for these and other items amounting to a debt in excess of $8,000.00; that Mr. Wicker had voluntarily surrendered the entire inventory of Service Station No. 816 (Wicker American) to American Oil Company on September 20, 1968, in return for credit on his account with American Oil Company; and that proper credit had been given him, relieving him of any further lia *649 bility to American Oil Company. American Oil Company alleged additionally that, when its field sales manager, Mr. Kollin, heard of the chattel mortgage to Louisiana National Bank, he went immediately to the Court House in Baton Rouge, but could find no record of the chattel mortgage, which, in fact was not recorded until November 6, 1968, the same date that the instant suit was filed.
Upon trial in the lower court it was found that the purported chattel mortgage given by defendant Wicker to the Louisiana National Bank was not valid because it did not describe the property attempted to be covered in sufficient detail. In view of this ruling the lower court did not find it necessary to rule on the issue of the time of recordation of the purported chattel mortgage. The lower court could not fipd any “willful and malicious intent” on the part of Mr. Wicker to deprive the Louisiana National Bank of its security or in the representation of his financial status at the time of securing the loan; therefore, it found that defendant Wicker's debt to plaintiff Louisiana National Bank had been discharged in the bankruptcy proceedings brought by Mr. Wicker.
The lower court gave judgment rejecting the demands of plaintiff Louisiana National Bank against both defendants, Bobby Wicker and the American Oil Company. From this judgment the Louisiana National Bank has appealed — alleging that the lower court erred in holding that defendant Wicker’s debt to plaintiff-appellant had been discharged in bankruptcy inasmuch as Mr. Wicker had intentionally secured the loan from plaintiff on the basis of a false financial statement upon which plaintiff relied “at least in part, upon the submission of such a statement.” (Appellant’s brief, p. 5); and, inasmuch as Mr. Wicker had committed a willful and malicious injury to its property within the meaning of the Bankruptcy Act by abandoning it to a third party. Plaintiff-appellant alleges additional error by the lower court in finding that it had no rights against American Oil Company based upon a valid and timely-filed chattel mortgage.
Under Section 17, subsection (a) (2, 4) of the Bankruptcy Act (11 U.S.C. A. sec. 35) it is provided that a bankrupt is released from all of his debts except such as.
” (2) are liabilities for obtaining money or property by false pretenses or false representations or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious injuries to the person or property of another . . . ”
The jurisprudence of this state has established as standards for determining the nondischargeability of a debt on the basis of alleged false statements that the defendant has made false representations, that he has done so with the intent of defrauding the plaintiff, that the plaintiff has relied upon these false representations and has been misled by them, even in part; and that once the allegation of false representation is made, the burden shifts to defendant to prove himself free of any intention to defraud. CHF Finance Company, Inc. v. Corca, 152 So.2d 830 (La.App. 4th Cir. 1963).
In the instant case the lower court judge could find no evidence of an intent to defraud plaintiff on the part of Mr. Wicker. Defendant Wicker, who had previously operated a filling station in Gonzales, had opened his station on the Airline Highway in February, 1968. The station belonged to American Oil Company and was operated by defendant Wicker on a commission basis. His inventory of equipment and “accessory items” such as those listed on the chattel mortgage herein sued upon, was obtained from American Oil Company on an open account basis, on which Mr. Wicker was making monthly payments. *650 Apparently Mr. Wicker was never very successful in this location, and by July had reached a state of rather serious financial consequences. He sought a loan from the branch manager of the Louisiana National Bank in the neighborhood of the filling station. This Manager, Mr. Tom Branch, requested a financial statement from Mr. Wicker, returned by him July 17, 1968, in which he showed his total assets as Fifty-One Thousand Six Hundred Two and 09/100 ($51,602.09) Dollars. He listed a small number of debts totaling Four Thousand One Hundred Fifty-Eight ($4,158.00) Dollars. Although Mr. Wicker owed the American Oil Company approximately Nine Thousand Seven Hundred ($9,700.-00) Dollars on July 1, 1968, he did not list this indebtedness in his financial statement. He also owed other indebtedness on the vehicles listed on his financial statement in addition to those liabilities itemized. He admitted that there was duplication of some $12,000.00 in stock and tools listed as assets in the valuation of the filling station at $30,000.00; yet the lengthy testimony of Mr. Wicker reveals him not to be an intentionally fraudulent man, but an inept businessman, vague about figures and business operations. When asked on cross-examination why he did not state to the Louisiana National Bank at the time of securing the loan from it that he also owed the American Oil Company, he answered, “ . . . first I said that I didn’t owe them any money but I was thinking when I first went into the station, and then I looked at it and I said I could have owed them a small amount, but it wouldn’t have been much.” (Tr. 81) Further cross-examination revealed that Mr. Wicker really did not know how much he owed American. His duplication in estimating the value of his business no doubt stemmed rom ignorance, also. In estimating the amount owed by him on his vehicles, Mr. Wicker was equally vague. It is obvious from reading the testimony that Mr. Wicker believed that all things, considered, his net worth was in excess of the $47,344.09 listed by him. Evidently the trial judge believed in the sincerity of Mr. Wicker. He wrote in his reasons for judgment as follows:
“ . . . It is true that Wicker did owe American Oil Company approximately $5,600.00 on the date that he gave the statement and this amount was not included in the statement; however, this fact did not substantially impair his net worth. Further Thomas Branch, who made the loan for the bank, acknowledged that the loan was made to Wicker not only on his financial statement, but, in addition, upon Wicker’s credit reputation and upon the security furnished in the chattel mortgage. The court is satisfied that had Wicker thought to include the indebtedness to American Oil Company on the statement, the bank would have still made the loan. The court fails to find that Wicker was guilty of any intentional misrepresentation in securing the loan.”
This court concurs in these findings, and believes that the defendant sustained his burden of proving that he had no intent to defraud plaintiff, made no fraudulent mispresentations, and that the plaintiff did not rely upon any false statements in extending the loan to defendant.
This court concurs in the finding of the lower court, also, in regard to the lack of fraudulent intent on the part of defendant Wicker in surrendering his entire inventory to American. In response to several questions as to whether or not Mr. Wicker considered himself the owner of his filling station inventory at the time of his filing in bankruptcy, Mr. Wicker stated:
A “I don’t think I ever thought about that one way or the other. I answered the questions of the attorneys for the bankruptcy. Whatever he wanted to know I tried to help him, but I mean I don’t know anything about receiving or anything like that.
Q All right, let me ask you this : When you left Wicker American station on *651 the day that you turned those keys over to Mr. Castler, didn’t you know at that time that these items were going to be applied on your account, you were going to be given credit for all of these items that were in the station?
A I figured Mr. Castler and the Louisiana National would work that out, because I didn’t have anything else to do with it. (Emphasis added.)
Q You didn’t think that he was just going to take this stuff away from you and not give you any credit?
A Well, I didn’t know, I didn’t know if he was going to take it away from me or not. I figured—
Q Did Mr. Castler force you to give him those keys ? Did he say, ‘If you don’t give me those keys I am going to shoot you,’ or—
A I mean you know, when you know you are in a bind you know when you are in a bind, you have got to do something, so he had me where it was short there and I had to do what he wanted.
Q. What do you mean he had you where it was short?
A. Well, I knew that I was in a financial bind, well, everybody know what I’m talking about.
Q. Were you short on the gasoline payments that you were suppose to be making ?
A. I was short on all the payments.” (Tr. 79)
The foregoing is not the statement of a man with fraudulent intent. It is simply the statement of a man who “want out,” and reasons he does not have sufficient savoir faire to determine the proper means of extricating himself.
In the absence of a showing of fraudulent intent and mispresentation upon which plaintiff relied, and in the absence of any willful and malicious injury to the property of another, this court affirms the lower court in its opinion that defendant’s indebtedness to plaintiff was of such a nature as to be discharged in Mr. Wicker’s bankruptcy proceedings.
The plaintiff’s claims against American Oil Company are unavailing, also. This court agrees with the finding of the lower court that the instrument executed by Bobby Wicker in favor of the Louisiana National Bank was not a valid chattel mortgage.
The Louisiana Revised Statutes, Title 9:5352, provides:
“ . . .A chattel mortgage granted on any mass or assemblage of things, including without limitation, stocks of merchandise in retail, wholesale or manufacturing establishments, permitted by R. S. 9:5351, whether owned at the time of execution of the mortgage or to be acquired thereafter and on such additions as may come from natural increase or otherwise, shall describe the same as all of a particular class or classes or grade or kind or type or species or dimensions or as a stock of merchandise to be kept at a certain location. In all other cases a full description of the property to be mortgaged shall be set forth so that it may be identified and its location shall be stated. As amended Acts 1950, No. 516, § 1.”
Plaintiff argues that a valid bulk mortgage was executed by defendant Wicker under the terms of the statute quoted above. Inasmuch as the entire inventory of the items listed on the chattel mortgage form were not included, it cannot be considered a valid bulk mortgage. No entire class or unit of any item was described, or intended to be mortgaged. By the testimony of both Mr. Branch (Tr. 47) and Mr. Wicker (Tr. 59-60) only a portion of Mr. Wicker’s inventory was being mortgaged.
*652 The instrument at issue cannot be considered a valid mortgage of specific items either, because they were not described with sufficient definiteness to be identified or distinguished from any other accessory items in the Wicker Station which were not attempted to be mortgaged. No serial numbers, weights, prices, or any other customary means of identification were used. The itemization in plaintiff’s instrument is in marked contrast to the detailed descriptions used by American Oil to identify these same accessory items when selling them to Mr. Wicker. (See the invoices identified as Exhibits American Nos. 1, 2 and 3.)
The inadequacy of description used in the purported chattel mortgage is well-illustrated by consideration of only one or two items. The list of “mortgaged” items given above includes “100 tires” and “35 batteries ” yet there were, by the testimony of the Field Sales Manager, Mr. Kollin, more than thirty-five different types and sizes of tires, ranging in price from $16.97 to $46.75 and over fifteen different types of batteries, ranging from $14.95 to $25.95. How could the Sheriff possibly have known which tires and batteries to seize? The cases are legion to the effect that such description as used in the instrument under question is wholly inadequate to constitute proper description of specific items under the Louisiana Law of Chattel Mortgage. The plaintiff has failed entirely to identify the property upon which it thought it had a chattel mortgage. See Abbott v. Temple, 73 So.2d 647 (La.App.2d Cir. 1954) and the cases cited therein.
Since plaintiff is not the holder of a valid chattel mortgage on any items formerly placed in the Wicker American Station, it can have no valid claim against any property in the hands of the American Oil Company, or against the price of such items sold by it. Furthermore the finding that plaintiff did not hold a valid chattel mortgage vitiates its charge against Mr. Wicker, which has already been treated supra, of a malicious disposition of the property of another in violation of the Bankruptcy Act, with the result that Mr. Wicker’s debt was not discharged in bankruptcy. With no valid chattel mortgage Louisiana National Bank had no valid claim upon the property in Wicker American surrendered by Mr. Wicker to American Oil Company.
Even if the instrument held by plaintiff and executed by Bobby Wicker were a valid chattel mortgage, plaintiff still would have no claims against American Oil Company. The inventory in the Wicker American Station, surrendered by Mr. Wicker to the American Oil Company when he signed the inventory and turned the keys to the station over to American Oil’s representative, Mr. Kastler, on September 29, 1968, was subject to American’s superior claim by virtue of a lessor’s pledge under Civil Code Articles 2705 and 3218, and by right of a vendor’s privilege under Civil Code Article 3237, which pledge and privilege arise by operation of law and were clearly established by the invoices and account statements introduced into evidence. The items in the station surrendered to American Oil on September 20, 1968, became its property on that date even though it took a couple of months for this transaction to be correctly reflected in the company’s bookkeeping procedures, during which time plaintiff finally recorded its purported chattel mortgage. A vendor’s privilege primes a chattel mortgage subsequently recorded. Weiss v. Hudson Construction Co., 151 La. 1, 91 So. 525 (1922); Yiannopoulos Real Rights in Louisiana and Comparative Law: Part I, 23 La.L.R. 161, 228 (1963). After satisfying its claims against Mr. Wicker from the inventory left in Wicker American, it was determined that Mr. Wicker still owed American Oil Company $15.00, which American merely “wrote off”. There was no amount left in the hands of American Oil, after it had satisfied its own claims, against which plaintiff might have proceeded, if it had held a valid chattel mortgage.
Plaintiff-appellant has argued that, in the event that its instrument be *653 found invalid, it be recognized as having a claim for a revocatory action against American Oil Company under Articles 1969 et seq. of the Civil Code. This action is given to creditors, however, only in the case of a contract allegedly made in fraud of their rights. La.C.C. Arts. 1970, 1978. Not only is this not the case of a contract, but no fraud has been proven on the part of Mr. Wicker, as set forth above. Plaintiff’s argument on this point is without merit.
For all of the foregoing reasons the decision of the lower court will be affirmed at appellant’s costs.
Judgment affirmed.