369 So.2d 1212 (1979)
ARENSON INTERNATIONAL, INC., Plaintiff-Appellee,
v.
SHELVING SYSTEMS CORP. et al., Defendant-Appellant,
American Bank & Trust Co., Intervenor.
No. 13829.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1979.
*1213 Burnett, Sutton, Walker & Callaway, for intervenor.
Hargrove, Guyton, Ramey & Barlow, Shreveport, for plaintiff-appellee.
M. R. Fayard, Jr., Bossier City, for defendant-appellant.
Before BOLIN, HALL and JONES, JJ.
JONES, Judge.
Intervenor, American Bank & Trust Company, appeals a judgment ranking plaintiff's vendor's lien superior to intervenor's chattel mortgage, although the chattel mortgage was recorded prior to the sale which created the vendor's lien. The judgment dismissed the intervention at intervenor's cost.
Plaintiff, Arenson International (USA), Inc., holder of a past due promissory note with an unpaid balance of $31,388, dated June 9, 1976, brought this executory process proceeding against defendant, Shelving Systems Corporation. The note, secured by a chattel mortgage, was given for the price of office furniture sold by plaintiff to defendant in July, 1975. The sheriff seized the office furniture under writ of seizure and sale. American Bank intervened asserting it held a chattel mortgage on Shelving Systems' inventory recorded March 12, 1975, which was superior in rank to plaintiff's vendor's lien and chattel mortgage recorded June 10, 1976. Intervenor prayed to be paid in preference and priority to plaintiff out of the proceeds of the sheriff's sale.
In lieu of a trial, the parties submitted the case for decision on a joint stipulation of facts. American Bank's chattel mortgage, securing a $75,000 promissory note executed by Shelving Systems on March 10, 1975, recorded March 12, 1975, on which $73,710 remained unpaid, was recorded prior to the credit sale of office furniture by plaintiff to defendant. American Bank's floor plan mortgage described the property as follows:
"All of the masses or assemblages of inventory, and equipment contained, and to be kept, in the offices and warehouse of Shelving Systems Corporation located at 1023 Jack Wells Boulevard, Shreveport, Louisiana; it being intended, in accordance with R.S. 9:5351 that the lien of this mortgage shall cease as to all of such property disposed of by the mortgagor up to the time of foreclosure, but shall attach to the purchases made by mortgagor to supply the place of such property disposed of and to other after acquired additions to said masses or assemblages of said inventory, and . . ."
The defendant had been engaged in the sale of only industrial shelving until it purchased the inventory of office furniture for resale in July, 1975.
*1214 The trial court found office furniture was a completely different type of movable from industrial shelving and concluded it was not covered by the floor plan mortgage of intervenor because office furniture was not purchased to supply the place of disposed of industrial shelving or after acquired additions to the original stock of goods within the terms of LSA-R.S. 9:5351. The trial court further held plaintiff's vendor's lien was superior in rank to intervenor's chattel mortgage recorded prior to the sale of office furniture to Industrial Shelving for the reason the vendor's privilege arose before the chattel mortgage attached.[1]
The issues on appeal are (1) did the description in the floor plan mortgage cover the after acquired office furniture which was a different type of merchandise from that originally held by Shelving Systems for resale as their "stock of merchandise" (2) if the floor plan mortgage attached to the office furniture did it prime the vendor's lien?
Intervenor contends the trial court erred in failing to find the chattel mortgage attached to the office furniture in accordance with the terms of intervenor's mortgage which provided "shall attach to . . . other after acquired additions to said masses or assemblages of said inventory . . ." The applicable part of LSA-R.S. 9:5351 which authorizes the floor plan chattel mortgage provides:
"In order to secure the performance of any obligation, including future advances, it shall be lawful by complying with the provisions of this part to mortgage any and every kind of movable property, materials. . . including without limitation, stocks of merchandise in retail, wholesale or manufacturing establishments, even though the same may not be all of a similar nature or kind, in the case of stocks or merchandise, including those in retail, wholesale and manufacturing establishments, as well as all other movable property in bulk, but changing in specifics, the effect of the mortgage shall cease as to all articles disposed of by the mortgagor up to the time of foreclosure but shall attach to the purchases made to supply their place and to other after acquired additions to the original stock of goods, merchandise or other things in bulk originally mortgaged to secure the debt."

Intervenor contends its chattel mortgage meets the descriptive requirements of LSA-R.S. 9:5352 by stating the chattel mortgage covers inventory contained and to be kept in the offices and warehouse of defendant at a designated municipal address in Bossier Parish.
LSA-R.S. 9:5352 which provides the description requirements for the property included within a floor plan chattel mortgage provides in pertinent part:
". . . A chattel mortgage granted on any mass or assemblage of things, including without limitation, stocks of merchandise in retail, wholesale, or manufacturing establishments, permitted by R.S. 9:5351, whether owned at the time of execution of the mortgage or to be acquired thereafter and on such additions as may come from natural increase or otherwise, shall describe the same as all of a particular class or classes or grade or kind or type or species or dimensions or as a stock of merchandise to be kept at a certain location . . ."
A review of the quoted portions of LSA-R.S. 9:5351 and 9:5352 establish they authorize a floor plan chattel mortgage on an inventory (a stock of merchandise) and additions to it described in no manner other than by designation of the location wherein it is to be "kept". An examination of the description of the mortgaged property contained in intervenor's floor plan chattel mortgage reflects that it contains no description of the property other than a designated location where the masses and assemblages of inventory were to be kept. This floor plan mortgage prepared in accordance with the requirements of R.S. 9:5351 and *1215 9:5352 would have covered all movable property contained within defendant's inventory kept at the designated location at the time the mortgage was executed, regardless of what classes, kinds or species of property might have been included within the inventory. This floor plan chattel mortgage attached to all property subsequently brought to the designated location and added to the masses and assemblages of inventory there located. Under these circumstances, the chattel mortgage applied to the industrial shelving contained in defendant's inventory at the designated location when the chattel mortgage was executed and it further applied to the office furniture added to the inventory at the designated location contained in the chattel mortgage.
We observe that the provisions of the statutes authorizing the floor plan mortgage do provide for chattel mortgages covering particular classes or species of property, however, Industrial Shelving's floor plan mortgage was not prepared on this format. The intervenor's chattel mortgage was prepared to cover an inventory of property not described other than by designation of the location wherein it was to be kept. For this reason, the trial judge erred in finding that the added office furniture was not covered by the chattel mortgage because it was a different kind of property from the industrial shelving which was initially included within the inventory of defendant.
Intervenor asserts the trial court erred in ranking the vendor's privilege superior to the chattel mortgage on property purchased after the chattel mortgage was recorded. Intervenor contends the chattel mortgage on the furniture was effective from the time of its recordation on March 12, 1975, and ranks higher than the vendor's privilege which attached to the furniture at the time of the July 1975 credit sale. Intervenor contends its chattel mortgage is superior under the clear terms of LSA-R.S. 9:5354 which provides:
"Every such mortgage shall be effective as against third persons from the time of filing in the proper offices, and the filing shall be notice to all parties of the existence of the mortgage, which shall be superior in rank to any privilege or preference arising subsequently thereto."
The vendor's privilege arose at the moment of perfection of the sale of the office furniture in July, 1975.[2] The chattel mortgage did not attach to the furniture until it was delivered to the warehouse in August, 1975.
In the decision of United Novelty Co. v. Salemi, 68 So.2d 808 (La.App. 2d Cir. 1953), the court quoted with approval the following language from Smith v. Bratsos, 12 So.2d 241, 243, La.App., with regard to the time when the lien created by a chattel mortgage comes into effect:
"`To bring into existence the lien and privilege established by the statute, strict compliance with its requirements must be pursued. Such liens and privileges, it is uniformly held, are stricti juris. All prerequisites to their birth must be strictly observed. This principle is firmly imbedded in the jurisprudence of this state since legalization of chattel mortgages.'"
A chattel mortgage attaches or comes into being under the provisions of R.S. 9:5352, which authorizes the creation of a chattel mortgage on a non-described "stock of merchandise" by a designation of the location where it is to be kept, when the stock of *1216 merchandise is brought to the designated location.
The recordation of the chattel mortgage on non-described property as authorized by R.S. 9:5352 does not tell third parties what property is subject to the chattel mortgage. It is the delivery of the merchandise to the designated location in the chattel mortgage which has the effect of providing a description of the property covered by the mortgage and giving notice to third persons that a lien has been created against the property. It is then that the chattel mortgage attaches to the property.
The vendor's lien attached prior to "the existence of the mortgage" insofar as it was applicable to the office furniture and therefore, the provisions of R.S. 9:5354 ranks the vendor's lien superior for the reason the chattel mortgage is only superior to any privilege or preference arising subsequent thereto.
An unrecorded vendor's privilege on movable property is superior in rank to a subsequently executed and recorded chattel mortgage. Weiss v. Hudson Construction Company, 151 La. 1, 91 So. 525 (1922); Louisiana National Bank of Baton Rouge v. Wicker, 259 So.2d 646 (La.App. 1st Cir. 1972). It follows that a vendor's lien on movable property which comes into existence before a previously recorded chattel mortgage attaches primes the chattel mortgage.
The judgment appealed from dismissed the intervention "at intervenor's cost". There exists a dispute between the parties as to what portion if any of the keeper's cost incurred in connection with plaintiff's seizure of the defendant's furniture are included within "at intervenor's cost". The plaintiff called off the sheriff's sale set for July 27, 1977 after the intervention was filed. The seized furniture which was to have been the subject of the sale cost less than $45,000 and therefore, could not possibly have brought enough at the sale to have satisfied the $75,000 chattel mortgage of the intervenor which was asserted to be superior to that of plaintiff's vendor's lien of $31,388. Intervenor's lien was reflected as superior to plaintiff's chattel mortgage on a mortgage certificate contained in the record dated July 19, 1977. The sheriff would not have sold the furniture because it would not have brought enough to pay the lien superior to the seizing creditor's lien as required by C.C.P. Art. 2337:
"If the price offered by the highest bidder at the first or subsequent offering is not sufficient to discharge the costs of the sale and the mortgages, liens, and privileges superior to that of the seizing, creditor, the property shall not be sold."
Under these circumstances plaintiff was justified in postponing the sale until it could be determined which lien was superior in rank. Because the dispute between plaintiff and intervenor as to the rank of their liens was the cause of the delay in the sale and therefore the increase in the keeper's cost, we have concluded that it is equitable that they each be responsible for onehalf of the keeper's cost incurred while the intervention is pending.
For the reasons assigned, the judgment is AFFIRMED at appellant's cost, provided, however, that keeper's cost incurred while intervention was pending are assessed onehalf to plaintiff and one-half to intervenor.
NOTES
[1] This trial court determination necessarily was based upon an alternative factual finding that the floor plan mortgage attached to the office furniture.
[2] C.C.Art. 2456: "The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

C.C.Art. 3217: "The debts which are privileged on certain movables, are the following. . . (7) The price due on movable effects, if they are yet in the possession of the purchaser."
C.C.Art. 3227: "He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser.
So that although the vendor may have taken a note, bond or other acknowledgement from the buyer, he still enjoys the privilege."