524 So.2d 756 (1988)
W.W. SCOTT, Sr., et al., Plaintiffs-Appellees,
v.
Ronald J. REED, et al., Defendants-Appellants.
No. 87-29.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Lynn A. Derouen, New Iberia, for plaintiffs-appellees.
*757 Adcock & Dupree, Herschel C. Adcock, Baton Rouge, Michael D. Lopresto, New Iberia, for defendants-appellants.
Before GUIDRY, YELVERTON, JJ., and SWIFT,[*] J. Pro Tem.
G. WILLIAM SWIFT, Jr., Judge Pro Tem.
The principal issue presented by this appeal is whether or not the trial court erred in recognizing an unrecorded vendor's privilege on a movable mobile home as superior to a subsequently recorded chattel mortgage that was noted on the purchaser's certificate of title.
The defendants, Ronald J. and Deborah L. Reed, purchased a 1986 Sundowner Mobile Home from the plaintiff, W.W. Scott, Sr., d/b/a Scottie's Camper Sales, for a sales price of $12,185.00. It was agreed by the parties that the price would be met by trading in defendants' old mobile home valued at $5,500.00 and the remainder would be financed by Allied Finance Company, Inc. (Allied). Plaintiff understood the trade-in was to be free of encumbrances, and when he was informed by the defendants that there was a balance of $5,669.40 due under a mortgage on that home, it was agreed that Scott would pay off this amount to clear the title. The Reeds did not testify at the trial and only the plaintiff said that they agreed to reimburse him for this amount when or after the sale was finally closed. However, his daughter testified that later Mrs. Reed acknowledged they owed her father $5,500.00. It was necessary to order the new mobile home from the factory before the paperwork and payoff could be accomplished. In the meantime Mrs. Reed inspected and approved the home on its arrival and shortly thereafter, on September 4, 1985, the bill of sale and chattel mortgage on the Sundowner mobile home were executed by the parties. Allied paid the plaintiff $6,685.00 and the defendants paid him $169.40, leaving a deficiency of $5,500.00 of the purchase price, according to the plaintiff. Shortly thereafter Allied's chattel mortgage was forwarded to the Department of Public Safety and was noted on the certificate of title which was issued on October 3, 1985.
Scott filed a suit against the Reeds and Allied, praying for a judgment for the $5,500.00 unpaid balance of the purchase price and recognition of a vendor's privilege on the mobile home in priority over the chattel mortgage of Allied. The claim against Allied for the $5,500.00 debt of the Reeds was dismissed by the trial court by summary judgment. Thereafter judgment was rendered in favor of Mr. Scott against the Reeds for the $5,500.00 which also recognized the plaintiff's vendor privilege as superior to Allied's chattel mortgage. Allied has appealed suspensively. We affirm.
With the possible exception of whether and when the Reeds were to reimburse Scott for his payment of the $5,500.00 indebtedness owed on their old motor home, there is little, if any, dispute as to the facts in this case. Mr. Scott testified they agreed to do so when he received the payoff from Allied but when this was not done he was assured they had the money and were going to pay him. He said he trusted them to do so.
Allied's representative, Mike Snyder, said he was aware of the terms of the sale as recounted by Scott, including the latter's retiring the $5,500.00 mortgage on the trade-in. But he did not know about any agreement for reimbursement. Snyder did say that the sale seemed "funny" to him, "something haywire by the way the money was working out" and "Mr. Scott would actually be coming out several thousand dollars in the hole."
We are convinced from the record that the $12,185.00 purchase price of the mobile home was agreed to be the $6,685.00 loan from Allied and the trade-in of the Reeds' old home free and clear of encumbrances. Since it was valued by the parties at only $5,500.00 and it cost Mr. Scott $5,669.40 to clear the mortgage the Reeds owed him that amount of the purchase *758 price of the sale. Having been paid by them only $169.40 there exists an unpaid balance of the price for which Mr. Scott has a vendor's privilege on the object of the sale.
We turn now to the ranking of Scott's unrecorded vendor's privilege and Allied's chattel mortgage which has been filed with the Department of Public Safety and noted on the certificate of title to the Sundowner mobile home.
A vendor's privilege or lien on movables is provided by LSA-C.C. Articles 3217 and 3227. The former says in part:
"The debts which are privileged on certain movables, are the following:
* * * * * *
7. The price due on movable effects, if they are yet in the possession of the purchaser."
Article 3227 reads in pertinent part as follows:
"He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser."
Thus, this privilege attaches to the property sold at the time of the sale to secure the payment of the purchase price, and it is lost when the vendee loses possession of the movable. W.T. Grant Company v. Mitchell, 263 La. 627, 269 So.2d 186 (1972), aff'd 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974); United Credit Company v. Croswell Co., 219 La. 993, 54 So.2d 425 (1951). Though unrecorded it is generally superior in rank to a subsequently executed and recorded chattel mortgage. Arenson Inter., Inc. v. Shelving Systems Corp., 369 So.2d 1212 (La.App. 2 Cir.1979). Under our civil code the sale contract is perfected as soon as there exists an agreement for the object and for the price, although the object has not yet been delivered, nor the price paid. LSA-C.C. Art. 2456.
In the present case the bill of sale for the mobile home from Scott to the Reeds and Allied's chattel mortgage were both dated September 4, 1985. However, the certificate of title reflects that it was not issued until October 3, 1985. There is no proof in the record as to when it was received and validated by the secretary of the Department of Public Safety. Consequently, Allied's chattel mortgage did not become effective against third parties on the date of its execution and therefore was inferior in rank to Scott's prior vendor's privilege. See LSA-R.S. 32:710(B)(1)(b) and (c) which in this respect provide:
"B. (1)(b) Every such mortgage other than one securing a floor plan loan shall be effective as against third persons as of the time of its execution by the parties if the chattel mortgage is received and such receipt is validated by the secretary of the Department of Public Safety within fifteen days after such date of execution. However, in the case of an authentic act the time of execution shall be the date of execution before a notary public or other duly authorized officer, if by duly acknowledged private act, the date of signing by the parties shall be the time of execution.
(c) If the chattel mortgage is not received and such receipt is not validated by the secretary of the Department of Public Safety within fifteen days after such date of execution, it shall be effective as to all persons from the date such chattel mortgage is delivered to the secretary, and the same shall be superior in rank to any privilege or preference arising subsequently thereto."
The appellant acknowledges that generally an unrecorded vendor's privilege on a movable is superior in rank to a subsequently recorded chattel mortgage. However, it contends this is not the case as to vehicles subject to our certificate of title law. We do not agree. See Universal C.I.T. Credit Corporation v. Parker, 117 So.2d 660 (La.App. 2 Cir.1960), and Tallulah Finance Company v. Matthews, 116 So.2d 121 (La.App. 2 Cir.1959). While LSA-R.S. 32:710 has been amended several times since these cases were decided, there is no indication the legislature has ever *759 intended to change this rule as to ranking of liens and privileges.
Furthermore, Allied's representative, Snyder, readily admitted that everything was agreed between the Reeds and Scott some time before the chattel mortgage was prepared and the unit had been delivered before the loan was closed. He testified:
"Q. Mike, at the time that the chattel mortgage documents were actually executed you had been supplied by Mister Scott and the Reeds what the exact amount of the sales price was. Had you not?
A. Yes, we had.
Q. Okay. You had been supplied what the identity of the trailer wasthe serial number and whatnotso that you could prepare your mortgage papers?
A. Yes, that's correct.
Q. So at that point everything was squared away between them except for Mister Scott actually receiving the money in his hand so far as you were concerned? I mean they had agreed as to what was going to be sold; they had agreed as to how much was going to be paid for it; the only thing that hadn't happened was the money had not been transferred and the unit wasn't delivered?
A. That's correct.
Q. Okay.
A. Well the unit had been delivered at the time that the loan was done."
There being an agreement between the parties as to the object and price prior to September 4, 1985, it is clear that the sale was complete and the vendor's privilege existed even before the chattel mortgage was prepared on that day. LSA-C.C. Art. 2456.
We conclude for these reasons that the plaintiff's vendor's privilege for the unpaid $5,500.00 of the purchase price primed Allied's subsequently executed and recorded chattel mortgage.
From our review of the record we cannot agree with appellant's contention, that if there was any agreement by the Reeds to reimburse Scott the $5,500.00 which he paid for them to clear the mortgage on the trade-in so that it could be sold, this was a separate and distinct obligation from the sale and no privilege on the object resulted. We are convinced it was an integral part thereof.
We also cannot accept the defendant's other contention, that Allied relied to its detriment on Scott's failure to inform it that he would ever enforce a security interest in the mobile home, and therefore he is estopped from doing so under LSA-C.C. Art. 1967. That article reads in part:
"A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable."
There is no indication in the record that Allied relied on any promise by Scott in this transaction. He, of course, said nothing about enforcing any vendor's privilege because he fully expected to be reimbursed by the Reeds for the $5,500.00. Mr. Snyder was aware of the details of the sale and recognized that Scott was being shorted by this amount of the total purchase price. Certainly, it was not reasonable for his company to claim detrimental reliance from Scott's failure to tell him he was going to enforce his vendor's privilege if the Reeds did not pay. All of the facts were available to Mr. Snyder and he had noted there might be problems in the future.
Mr. Scott's failure to have the Reeds execute a promissory note and a chattel mortgage might be considered poor business practice, but he is not estopped from exercising his legal rights in collecting the $5,500.00 due by the Reeds.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are *760 taxed to the defendant-appellant, Allied Finance Company, Inc.
AFFIRMED.
NOTES
[*] Judge G. William Swift, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.